**David NEUMAN, Petitioner–Appellant,**

v.

**Jessie RIVERS, Respondent–Appellee.**

**No. 96–1254.**

United States Court of Appeals,
Sixth Circuit.

Argued March 18, 1997.

Decided Sept. 4, 1997.

Arthur J. Tarnow (argued and briefed), Detroit, MI, for Petitioner–Appellant.

Janice M. Joyce Bartee (briefed), Office of Prosecuting Attorney, County of Wayne, Detroit, MI, Karen M. Woodside (argued), Wayne County Prosecutor's Office, Detroit, MI, for Respondent–Appellee.

Before: MERRITT, KRUPANSKY, and BOGGS, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

In June 1989, petitioner David Neuman attended an Ozzy Osbourne concert in Pine

Knob, Michigan, in the company of his neighbor, Donna Michelson, her two brothers, and several other friends. The group went to the performance in David's car, but David said he was drunk, so Donna drove. After arriving at the venue, she kept the car keys. During the performance, David went off to buy a beer, and never came back to his seat. When the event was over, the group of friends looked for David in vain, then left without him.

Later, in the middle of the night, Donna returned the car to David's home. She testified that an enraged David forced her at gunpoint to have sex *first with his father,* Ronald Neuman, and then with himself. During the course of this activity, David's girlfriend, Sandra Michelek, telephoned. For some reason, Neuman handed the phone to Donna, who asked Sandra to call the police.

Meanwhile, Donna's brothers, Michael and Timothy Twardokis, came to the Neuman house to look for their sister. Ronald Neuman allegedly fired a gun in the air, then pointed it at Michael. David allegedly swung a sawed-off shot gun at Michael Twardokis, striking him in the head. The brothers and their sister escaped, and immediately reported the incident to the police, who arrived at the scene and arrested both Neumans.

The Neumans were tried separately, and convicted of their respective offenses: in David's case, first degree criminal sexual conduct, felonious assault (committed against Michael Twardokis), and possession of a firearm during commission of a felony ("felony-firearm"). He was sentenced to a term of imprisonment of fifteen to forty-five years on the criminal sexual conduct count, a concurrent term of two to four years on the felonious assault charge, and a consecutive two-year term on the felony-firearm count. After an initial remand for further proceedings, the Michigan Court of Appeals affirmed David's conviction and sentences, and the Michigan Supreme Court denied leave to appeal.

Neuman filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court, after receiving a magistrate judge's report and recommendation, denied the application. *Neuman v. Rivers,* No.

94–CV–74568–DT (E.D.Mich. Feb. 16, 1996). The district court issued a certificate of probable cause for appeal pursuant to 28 U.S.C. § 2254. We now affirm.

### I

■ On appeal, Neuman first alleges that the trial court deprived him of his constitutional right to testify in his own behalf. Neuman asserts that he was prevented from taking the stand to testify that Michelson was untruthful, and that he had acted in self-defense as to the felonious assault count.

The defense rested without Neuman taking the stand. The court then conferred with the parties about jury instructions, and ruled that evidence did not warrant inclusion of an instruction on self-defense. Faced with that ruling, Neuman's attorney moved to reopen the proofs to allow Neuman to testify. The judge chastised Neuman's attorney, Halpern, for "playing games" with the court and for attempting to manipulate the court into reopening the proofs after the court denied a requested jury instruction. He denied the motion to allow Neuman to testify, stating: "You already rested. You don't get two bites. You made your decision. You live with it."

Neuman appealed on the grounds that he was thereby denied his Fifth Amendment right to testify on his own behalf. The state court of appeals remanded for an evidentiary hearing to determine whether Neuman voluntarily waived that right. At the hearing, Halpern testified that Neuman had made clear, since the beginning of preparation for trial, that he wanted to take the stand: "It was always the position of the defendant that he wanted to testify at trial." Initially, Halpern suggested a wait-and-see approach. For one thing, Halpern believed there was already sufficient evidence to support a theory of self-defense. Just before resting, he urged Neuman not to testify, fearing that it would open the door for the prosecution to bring in evidence of Neuman's flight from the jurisdiction. Halpern testified that, between the end of the testimony of the last defense witness and Halpern's informing the court that the defense rested, Neuman had

little or no opportunity to insist to Halpern that he wanted to testify. Despite this testimony, the trial court determined that Neuman knowingly and voluntarily waived his right to testify. On review, the state court of appeals agreed, noting that "the record reflects that defendant spent approximately 15 to 20 hours with counsel preparing for trial, and that the subject of defendant testifying was frequently discussed." *People v. Neuman*, Nos. 133813, 139348 (Mich.Ct.App. Feb. 3, 1994).

In considering Neuman's habeas petition, the district court began its review of this issue by correctly noting that a criminal defendant has a fundamental constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987) (finding right rooted in Due Process Clauses of Fifth and Fourteenth Amendments, in Compulsory Process Clause of Sixth Amendment, and in Fifth Amendment guarantee against compelled testimony). However, that right

> may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. But restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify.

*Id.* at 55–56, 107 S.Ct. at 2711 (internal citation and quotation marks omitted).

The district court, agreeing with the magistrate judge, first found that Neuman had knowingly and voluntarily waived his right to testify in his own behalf. It then went on to hold that the trial court's refusal to permit "testimony by the defendant once the proofs have been closed did not unconstitutionally infringe on the defendant's right to testify." The court relied on *United States v. Jones*, 880 F.2d 55 (8th Cir.1989), which stated:

> The rule generally limiting testimony to the evidence-taking stage of trial does not unconstitutionally infringe upon a defendant's right to testify. While placing only a minor limitation on the right, the rule promotes both fairness and order in trials,

interests which, of course, are crucial to the legitimacy of the trial process. In the interests of fairness and order, it simply imposes a commonsense requirement that the right to testify be exercised in a timely fashion. And consonant with the Supreme Court's admonition in *Rock*, the rule is not "arbitrary or disproportionate to the purpose [it is] designed to serve." ... In contrast to the state law struck down in *Rock*, which left the trial court no discretion to admit a criminal defendant's hypnotically refreshed testimony, under the rule at issue here the district court retains discretion to reopen the evidence to allow the defendant to testify. Without reasonable rules regulating the presentation of evidence and arguments, courts could not effectively function. We find here no constitutional infirmity.

880 F.2d at 59–60 (footnote omitted). The district court reasoned that the state trial court did not abuse its discretion in refusing to reopen the proofs, and consequently did not violate Neuman's right to testify.

The holding in *Jones* is consistent with the Supreme Court's statement in *Rock* that "[n]umerous state procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify. *See, e.g., Chambers v. Mississippi*, 410 U.S. [284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ] at 302 ... ("In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence")." 483 U.S. at 56 n. 11, 107 S.Ct. at 2711.

■ However, *Rock* also requires a court to consider whether adherence to such rules, under the circumstances of the case, is "arbitrary or disproportionate to the purposes they are designed to serve." 483 U.S. at 55–56, 107 S.Ct. at 2711–12. Obviously, it is highly important for trials to proceed along an orderly, predictable track, and, just as obviously, departures from the routine could unfairly interfere with the prosecution. However, as the district court itself pointed out, "[w]hen fundamental rights are concerned, 'courts must not mechanistically ap-

ply rules of procedure and evidence when to do so would defeat the ends of justice,'" *citing Smith v. Campbell,* 781 F.Supp. 521, 532 (M.D.Tenn.1991), *aff'd,* 961 F.2d 1578 (6th Cir.1992). Thus, it seems clear that a violation of the constitutional right to testify in one's own behalf could potentially be found in the denial of a defendant's request to testify after the proofs have been closed. Here, we find some merit to Neuman's argument that, because there had been no rebuttal witnesses, no closing arguments, and no instructions to the jury, the prosecution would not have suffered prejudice had Neuman been allowed to testify. Neuman's case differs in this way from *Jones,* in which, "by the time the request to testify was made, the parties had prepared jury instructions and summations and potential rebuttal witnesses had been released and were unavailable." 880 F.2d. at 60 n. 5. The standard of review in a habeas application is not whether the trial court abused its discretion, but more precisely, whether the error in the ruling "rises to the level of depriving the defendant of fundamental fairness." *See, e.g., Spalla v. Foltz,* 788 F.2d 400, 405 (6th Cir.1986), quoting *Matlock v. Rose,* 731 F.2d 1236, 1242 (6th Cir.1984).

However, none of this can avail Neuman where he was not *deprived* of his right to testify, but rather *waived* that right. By remanding to the trial court for an evidentiary hearing, the Michigan court of appeals demonstrated that it was sensitive to the issue of whether Neuman voluntarily and knowingly waived his right to testify on his own behalf. The trial court made its determination that Neuman did so, and the state court of appeals affirmed it. We respect the admonition that "courts indulge every reasonable presumption against waiver of fundamental constitutional rights" and "do not presume acquiescence in [their] loss," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (internal quotations and citations omitted). Here, however, two Michigan courts found as a matter of fact that Neuman waived the right at issue. Even if the evidence might support the alternative conclusion, we find nothing in the rec-

ord to suggest that these determinations were not "full, fair, and adequate," or were otherwise deficient in any of the ways enumerated in the federal habeas statute, so as to overcome the presumption of their correctness that must be accorded by a federal court entertaining a habeas petition. *See* 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981). Consequently, we accept the finding that Neuman voluntarily waived his right to testify in his own behalf. There was not, therefore, any violation of that constitutional right that could support his habeas petition. *See* 28 U.S.C. § 2254(a).

II

Neuman alleges that rulings by the trial court admitting testimony Neuman describes as hearsay violated his rights under the Confrontation Clause.

1. *Admission of Ronald Neuman's Out-of-Court Statements*

■ Ronald Neuman, having invoked his right against self-incrimination, was unavailable to testify at his son's trial. The trial court admitted testimony from an Officer Wenk that Ronald Neuman had confessed to having oral sex with the complainant, and to firing a gun into the air. Neuman argues that admission of his father's testimony violated his rights under the Confrontation Clause. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, the admission of out-of-court statements of unavailable hearsay declarants pursuant to "firmly rooted" exceptions to the hearsay rule does not violate the Confrontation Clause, because the statements are presumed to bear adequate indicia of reliability. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). The district court correctly held that Wenk's out-of-court statements were admissible under the declaration against penal interest exception to the hearsay rule, a "firmly rooted" exception. *Cf.* FED.R.EVID. 804(b)(3).[1] Therefore, the admission of this

---

**1.** Of course, the state court applied Michigan's rules of evidence. For convenience, we may

analyze the constitutional issue at hand under the federal rules. The requirements of the feder-

testimony did not violate Neuman's rights under the Confrontation Clause.

### 2. *Admission of Officer Johnson's Testimony*

■ Neuman next argues that it was error for the trial court to admit testimony from an Officer Johnson regarding statements that he overheard one or both of the Neumans make.

> Johnson testified that when he arrived at the scene he heard very loud voices coming from within the house. Johnson stood by an open window and listened to what was being said, though he could not see the parties who were speaking. As Johnson would later discover, the conversation was between petitioner and his father Ronald Neuman. He described the two individuals who were talking to be "[h]aving a private party. Laughing. Joking." Johnson testified that he heard "the slapping of hands, like high fives...." He testified that the individuals were bragging about having had sex with someone and that they would say they paid $20 for her services. Johnson also testified that he heard one individual say "they'll never find the guns under the mattress."

Mem. Op. at 8. At trial, Neuman's attorney unsuccessfully objected to this testimony as hearsay. The district court found this testimony to be "a potential hearsay problem because Johnson could not identify which party made each individual statement; some of the statements admitted into court could have been the statements of Ronald Neuman. However, the context and content of the conversation as described by Johnson indicate that any incriminating statements were adopted by petitioner.... The adoptive admission exception to hearsay is ... firmly rooted."[2]

■ The Sixth Circuit has discussed adoptive admissions as follows:

> Fed.R.Evid. 801(d)(2)(B) permits a court to allow into evidence a statement as non-hearsay if "[t]he statement is offered against a party and is ... a statement of which the party has manifested an adoption or belief in its truth." Adoption can be manifested by any appropriate means, such as language, conduct, or silence.... If the statements are viewed as the defendant's own, they constitute admissions properly characterized as non-hearsay under Fed.R.Evid. 801(d)(2).
>
> When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.

*United States v. Jinadu,* 98 F.3d 239, 244 (6th Cir.1996).

If the overheard statements were made by the defendant, they were admissible as statements against penal interest. If they were made by his father, they were similarly admissible as statements against penal interest. Further, the circumstances described by Johnson were adequate to support the conclusion that David Neuman manifested adoption of the statements by his conduct. There was no violation of the Confrontation Clause in the admission of Johnson's testimony regarding the out-of-court statements of the Neumans.

### 3. *Testimony Regarding Sandra Michelek*

■ Officer Johnson testified that, just after he and Officer Wenk arrested the Neu-

---

al hearsay rules and the Confrontation Clause largely overlap, so if we find that the state court's rulings satisfied the federal rule, they almost certainly pass federal constitutional muster. *See* WEINSTEIN'S EVIDENCE MANUAL (student ed.1995) § 14.03 ("evidence that is admissible pursuant to Rules 801, 803, or 804 will in virtually every instance satisfy the Confrontation Clause").

**2.** As treated in the Federal Rules of Evidence, adoptive admissions are not exceptions to hearsay, but definitionally are among those "state-

ments which are not hearsay." FED. R. EVID. 801(d)(2)(B). This does not change the district court's analysis. "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule.... No guarantee of trustworthiness is required in the case of an admission." FED.R.EVID. 801(d)(2) advisory committee's note.

mans, Sandra Michelek approached them on the street. He stated that she was excited and upset, that she was bruised or bleeding around her nose or mouth, and that she told them that the Neumans had broken into her house armed with guns, and had assaulted her. Neuman's trial counsel objected to this testimony. The trial court permitted the testimony under the excited-utterance exception to the hearsay rule. *Cf.* FED.R.EVID. 803(2). After Officer Wenk also testified that Michelek had stated that Neuman hit her, the trial court struck the testimony and instructed the jury not to consider it. However, the court made no instruction specifically about Johnson's similar testimony.

Neuman argues that the trial court thereby erred in admitting prejudicial other-act evidence, and by admitting evidence that, even if permissible under an exception to the hearsay rule, was irrelevant. The district court disagreed that the evidence that Neuman had broken into Michelek's house was irrelevant, describing it as "arguably highly relevant." The court acknowledged that the evidence that Michelek was bleeding was "arguably irrelevant to any issue in this case," but correctly concluded that "it is clear that the admission of the testimony was by no means so prejudicial as to deprive petitioner of fundamental fairness."

### III

■ Neuman alleges that his trial counsel, by urging him not to take the stand on the erroneous belief that to do so would open the door to otherwise inadmissible evidence, was so ineffective as to violate his right to counsel under the Sixth Amendment. *See Strickland v. Washington,* 466 U.S. 668, 684, 686, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984) ("[T]his Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial.... [T]he Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'").

The magistrate judge, upon review of the trial record, found that "trial counsel provided petitioner with a vigorous and well-planned defense." Further, the magistrate judge noted that Neuman "does not articulate how his testimony would have enabled him to obtain a self-defense instruction or how otherwise to establish reasonable doubt as to his guilt." Therefore, the magistrate judge concluded, the purported ineffective assistance of counsel did not rise to the level of a constitutional violation under the standards set forth in *Strickland,* which require the defendant to show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *See id.* at 687, 104 S.Ct. at 2064; *see also Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993) (prejudice to defendant from ineffective assistance must have made trial fundamentally unfair or unreliable); *Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir.1996).

The district court held that Neuman waived his right of appeal on his ineffective assistance of counsel theory by not objecting to the magistrate judge's report and recommendation on that score. The question arises whether Neuman preserved the issue for appeal by referring, in the objections he did file before the district court, to an earlier-filed memorandum of law to the magistrate judge that discussed the IAC argument.

Neuman's objections, which were filed timely, begin as follows:

> Mr. Neuman objects to the Magistrate's Report and Recommendation for the reasons set forth in the Memorandum of Law in Support of the Petition of Habeas Corpus previously filed (attached).

The statement of objections then sets forth *three* arguments under separate point headings:

I. Mr. Neuman was denied his constitutional right to testify on his own behalf.

II. The prosecutor's conduct deprived Mr. Neuman a fair trial as guaranteed by the constitution by:

  A. Violating the right of confrontation, Bruton v. United States.

  .   .   .   .   .

  B. Introducing evidence of other unrelated alleged crimes.

III. The trial court's instructions were inadequate and deprived Mr. Neuman of his constitutional right to due process as follows:

A. Refusing to instruct on self-defense....

B. Amending the criminal sexual conduct charged....

C. Failing to mention the effects of alcohol as to the specific intent requirement....

The first point was followed by about a page of argument. Points II and III were not similarly followed by argumentation, but merely stated "Mr. Neuman relies on the memorandum of law previously filed."

The memorandum of law referred to included the same three point headings, with extensive accompanying arguments. The memorandum also included a *fourth* heading:

IV. Mr. Neuman may have been denied effective assistance of counsel as required by the constitution by the trial court's ruling that counsel's resting prohibited Mr. Neuman from testifying.

This point heading was followed by several pages of argument, which, without question, explored the issue of ineffective assistance of counsel.

The magistrate judge's report and recommendation explicitly included a discussion of Neuman's claim of IAC, and the reasons for rejecting that claim.

The district court's opinion accompanying the order denying Neuman's petition began by setting for verbatim all *four* of Neuman's arguments before the magistrate judge. It then stated that, following the magistrate's report and recommendation, "Neuman filed objections to the R & R, objecting only to the Magistrate's conclusions regarding the *first three* issues" (emphasis added).

■ This court has held that, under some circumstances, referring to previously filed documents is sufficient to state an objection to a magistrate judge's report and recommendations. *Kelly v. Withrow,* 25 F.3d 363, 366 (6th Cir.1994). However, the court in that case cautioned that "We do not pronounce a general rule that every attempt to incorporate other documents by reference in lieu of spelling out specific objections to a magistrate's report will suffice." *Ibid.* The court in *Kelly* discussed objections to magistrate's reports as follows:

Before reaching the substantive issues raised by the petitioner, we must deal with the respondent's assertion that Kelly waived the right to appeal by failing to file "specific objections" to the magistrate judge's report and recommendations.

. . .

Exercising its supervisory power over the district courts, this court held in *United States v. Walters,* 638 F.2d 947, 949–50 (1981), that a party must file timely objections to a magistrate's report with the district court in order to preserve the right to appeal. The purpose of such objections is to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Id.* at 950. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), a habeas corpus case. The Court stated that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 147, 106 S.Ct. at 471 (footnote omitted).

In *Smith v. Detroit Federation of Teachers, Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987), we stated that "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."

The only case we have found in which a party attempted to incorporate previous filings by reference in objections to a magistrate's report and recommendations provides little help. In *Howard v. Secretary of Health and Human Services,* 932 F.2d 505 (6th Cir.1991), the party who lost before the magistrate filed a document in which she specifically objected to the magistrate's determination to deny her request

for relief and stated that she "supported" her objections by relying on her earlier brief in support of her motion for summary judgment. The record disclosed, however, that the party had previously filed neither a summary judgment motion nor a brief. In holding that the party had waived appellate review we wrote:

A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Id.* at 509.

The requirement for specific objections to a magistrate judge's report is not jurisdictional and a failure to comply may be excused in the interest of justice. *Kent v. Johnson,* 821 F.2d 1220, 1222–23 (6th Cir. 1987). In the present case, unlike in *Howard,* the objections directed the district judge's attention to specific issues decided by the magistrate contrary to Kelly's position. The district judge apparently had no problem in focusing on the specific areas of disagreement between the parties. Thus, the objections served the purposes of the requirement that objections be specific.

We do not pronounce a general rule that every attempt to incorporate other documents by reference in lieu of spelling out specific objections to a magistrate's report will suffice. The circumstances of this case—in particular, the district judge's .acknowledgment that he was able to understand and review the specific determinations of the magistrate objected to by the petitioner—lead us to conclude that we should consider the merits of this appeal. We caution the attorneys of the circuit that a concise statement of specific holdings of the magistrate judge to which exception is taken is the preferred and safer course. 25 F.3d at 365–66.

In one sense, Neuman has a better case than the appellant in *Howard,* who had previously filed neither the motion nor brief in which she purportedly discussed her objections. Neuman really did file the memorandum before the magistrate judge that he referred to in the objections before the district court. However, by specifically relying on only some of the points in the brief, while omitting others, Neuman appears to have "directed the district judge's attention" *away* from specific issues decided against him. Here, unlike *Kelly,* the court did not acknowledge that it was able to understand the specific determinations of the magistrate objected to by the petitioner. Indeed, the district court opinion indicated that the contrary was true. Under these circumstances, we find that merely referring to some parts of the previously-filed memorandum did not adequately call the district court's attention to the ineffective assistance claim, especially when the specific references to the other three points clearly implied that the fourth point was not being raised. The reference was not sufficiently specific to satisfy the standards announced by this court in cases including *Walters, Smith, Howard,* and *Kelly.*

IV

Neuman alleges that the trial court's instructions to the jury were inadequate in three ways, each of which deprived him of his due process rights. He argues that the trial court should have instructed the jury to consider the defense of self-defense with respect to the felonious assault charge. The district court held that Neuman was not entitled to the desired instruction "because there was no evidence to support a theory of self-defense." The only evidence put forward by Neuman is that the glass on the front door of the Neumans' house was broken, allegedly by the Twardokis brothers. We agree with the district court that the trial court was not constitutionally required to give a self-defense instruction on the basis of such meager evidence.

Neuman argues that the trial court should have instructed the jury that voluntary intoxication can be a defense to the specific-intent crime of felonious assault, even though Neuman did not request such an instruction. The district court acknowledged the existence of such a defense, but noted that, under Michigan law, the intoxication must be so severe as to prohibit the defendant from forming the requisite specific intent to commit the assault. *People v. Flaherty,* 165 Mich.App. 113, 123–24, 418 N.W.2d 695 (1987). The district court determined that there was insufficient evidence to support the conclusion that Neuman was intoxicated to that degree, and that it was not, therefore, constitutional error for the trial court to fail to instruct the jury on the defense. We agree.

Finally, Neuman alleges that the trial court, by means of its instructions concerning the criminal sexual conduct count, constructively amended the criminal complaint. The complaint alleged that Neuman unsuccessfully attempted to force Michelson to have anal sex. The trial court instructed the jury, in part, as follows:

> In Count 1 the defendant is charged with the crime of criminal sexual conduct in the first degree. To establish this charge, the prosecution must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant engaged in a sexual act which involved some actual entry in the genital or anal opening of the complainant's vagina or anus by the penis. Any such entry however slight is sufficient. . . .

Neuman alleges that the court thereby effectively amended the complaint to include a charge of anal penetration. As the district court noted, the trial court's instructions correctly recited the requirement of sexual penetration contained in the Michigan statute, *see* Mich. Compiled Laws 750.520b(1), "and it was up to the jury to determine if the facts of the case established penetration." Further, the court reasoned that "[e]ven if the judge's instruction was overbroad by including anal penetration, the error would be harmless beyond a reasonable doubt because of the over-whelming evidence pointing toward vaginal penetration by petitioner." We agree.

## V

For the reasons discussed above, the district court's denial of Neuman's application for a writ of habeas corpus is AFFIRMED.