**Edward GILLIAM, Petitioner–Appellant,**

v.

**Betty MITCHELL, Warden, Respondent–Appellee.**

No. 97–3426.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 17, 1998.

Decided June 9, 1999.

Jill E. Stone (argued and briefed), David H. Bodiker, Public Defender's Office, Ohio Public Defender Commission, Columbus, OH, for Petitioner–Appellant.

Jonathan R. Fulkerson (argued and briefed), Office of the Attorney General of Ohio, Capital Crimes Section, Columbus, OH, for Respondent–Appellee.

Before: MERRITT, NORRIS, and GILMAN, Circuit Judges.

ALAN E. NORRIS, J., delivered the opinion of the court, in which MERRITT, J., joined. GILMAN, J. (pp. 995–96), delivered a separate concurring opinion.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Ohio prisoner Edward Gilliam appeals from the denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. In 1991, petitioner was convicted following a bench trial for his part in the armed robbery of a drive-through store located in Elyria, Ohio.

On appeal he contends that the trial court violated his Sixth Amendment right to confront the witnesses against him by admitting the statement of a non-testifying co-defendant. Assuming that we find a Confrontation Clause violation and engage in harmless error analysis, he then asks us to apply the standard articulated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (error must be harmless beyond a reasonable doubt) rather than the standard more recently set out in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (error must have substantial and injurious influence in determining the verdict).

### I.

As a preliminary matter, petitioner initiated this action prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (codified at 28 U.S.C. § 2254). Consequently, the statute governing habeas petitions that was in effect prior to the passage of the AEDPA applies to this case. *Lindh v. Murphy*, 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138

L.Ed.2d 481 (1997). Under that version of the statute, findings of fact made by a state trial or appellate court are entitled to a "presumption of correctness." 28 U.S.C. § 2254(d) (subsequently amended); *see Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

The Ohio Supreme Court elected to hear this case on direct appeal and summarized the facts as follows:

On August 26, 1991, defendant-appellant, Edward Gilliam, made a statement to the police. Detective Mike Medders of the Elyria Police Department testified that Gilliam admitted that on August 21, he rode to Rite Nau Beverage in Elyria with William Moore and Bruce Treadwell. Appellant went inside and ordered a bottle of wine from the employee on duty, who was identified later as Joseph Pleban. Pleban told appellant that the total came to $2.01. Appellant handed Pleban $2.00, and while appellant was digging in his pockets for a penny, Treadwell appeared with a shotgun and demanded money.

Pleban testified the man who had ordered the wine did not appear surprised when Treadwell appeared with the shotgun. Pleban explained that he followed Treadwell's orders, and went to the cooler to get the money bag. As Pleban walked to the cooler, Treadwell said, "Don't try anything funny, I'll put a hole in your back." Treadwell took the money from the cash register and the money bag, and closed Pleban in the cooler. Pleban watched through the glass windows on the side of the cooler. He could no longer see appellant, but he could see Treadwell stuffing money into his pants. As Treadwell left, Pleban noticed that he could no longer see the shotgun.

Appellant stated to police that he and Treadwell left together and met Moore back at the car. A witness, Vicki Glover, testified that she had seen two black males laughing and running from the direction of Rite Nau. The men ran to a parked car four houses down from Rite Nau, in which car a third man (whom she identified as Moore) was waiting.

The car was parked in front of the witness' house and she was in her front yard approximately ten feet away from the vehicle. The four-door vehicle was gray in color. One man got into the front seat. The other man got in behind the driver, but had trouble getting in, "like he had a stiff leg or something." The witness heard Moore ask the men either, "What did you get?" or, "How much did you get?"

When questioned by the Elyria police, Moore admitted that he had driven appellant and Treadwell to Rite Nau to "check it out." Moore admitted that he assumed this meant they were "gonna rob the place." In his taped confession, Moore also admitted that he had seen a shotgun before the robbery, which he believed Treadwell had brought, but Moore thought was owned by appellant. Moore stated that appellant and Treadwell went inside while Moore waited with the car. Gilliam and Treadwell returned to the car together, with money in a bag, and told Moore that they had gotten some money. Both men got into the car; appellant got into the front seat. Moore then drove them to Treadwell's house. Treadwell carried the shotgun inside and appellant went home.

Appellant was tried before the court, separately from Moore and Treadwell. The state called Moore to the witness stand, but he exercised his Fifth Amendment privilege and refused to testify. Consequently, the state offered Moore's taped confession into evidence over appellant's objection. The state also introduced appellant's taped statement into evidence. Based on these tapes and other evidence, the trial court convicted appellant of aggravated robbery with both a firearm and a prior crime of violence specification.

*State v. Gilliam,* 70 Ohio St.3d 17, 18–19, 635 N.E.2d 1242, 1244 (1994). Petitioner does not take issue with this factual recitation but rather focuses upon the effect of

permitting Moore's taped confession to be introduced at trial.

In denying relief to petitioner, the Ohio Supreme Court dealt exclusively with the issue now before us: "whether the admission of a co-defendant's taped statement after the co-defendant becomes unavailable violated appellant's Sixth Amendment right to confront adverse witnesses." *Id.* at 19, 635 N.E.2d at 1245. The Court concluded that it did not:

> The Confrontation Clause is a constitutional safeguard that ensures a defendant will not be convicted based on the charges of unseen, unknown, and unchallengeable witnesses. *Lee v. Illinois,* 476 U.S. 530, 540, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Thus, the Confrontation Clause bars the admission of some evidence that would otherwise be admissible under a hearsay exception. *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause requires a showing that he is unavailable and that the statement bears adequate "indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The reliability standard can be satisfied without more in a case where the evidence falls within a firmly rooted hearsay exception. *Id.* at 66, 100 S.Ct. 2531. Otherwise, to satisfy the Confrontation Clause the evidence must be supported by a showing of "particularized guarantees of trustworthiness." *Id.*

*Id.* at 19–20, 635 N.E.2d at 1245 (citations reformatted). The Court went on to hold that the statement at issue fell within a firmly rooted hearsay exception as a statement against interest. *Id.* at 21, 635 N.E.2d at 1246 (citing Ohio R. Evid. 804(B)(3)). The Court also held that the challenged statement did not violate the Confrontation Clause because it came with particularized guarantees of trustworthiness. *Id.* Among other things, it looked to the fact that declarant did not attempt to shift the blame and that he had been advised of his rights before the statement was made. *Id.*

Petitioner initiated this action on August 1, 1995, raising the same Sixth Amendment issue considered by the Ohio Supreme Court. The matter was initially referred to a magistrate judge for a report and recommendation. The magistrate judge took issue with the Ohio Supreme Court, concluding that the statement at issue did not fall within any firmly rooted hearsay exception and also did not have the particularized guarantees of trustworthiness required by the Confrontation Clause. However, the report and recommendation went on to conclude that the admission of the statement constituted harmless error.

The district court agreed that the writ should be denied but rejected the magistrate judge's reasoning. The court indicated that it was "inclined to find that Rule 804(B)(3) is a firmly rooted hearsay exception." However, it based its denial of the writ upon the second ground articulated by the Ohio Supreme Court: that the statement "had sufficient particularized guarantees of trustworthiness that [its] admission against Petitioner did not violate Petitioner's rights under the Confrontation Clause." The court also found, for purposes of argument, that the error—if any—was harmless.

In an order dated December 16, 1997, this court granted a certificate of probable cause.

## II.

### A. Confrontation Clause Challenge

█ The proper place to begin analysis of this issue is *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Roberts* involved "the constitutional propriety of the introduction in evidence of the preliminary hearing testimony of a witness not produced at the defendant's subsequent state criminal trial." *Id.* at 58, 100 S.Ct. 2531. After some discussion of the Confrontation Clause and its interaction

with the hearsay rules, the Court summarized the proper analysis in these terms:

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. 2531.

As mentioned above, the Ohio Supreme Court concluded that the statement of the non-testifying witness was proper because it fell "within a firmly rooted hearsay exception" and showed particularized guarantees of trustworthiness.

■ With respect to the "firmly rooted hearsay exception" question, petitioner points out that the Supreme Court has explicitly declined to decide that issue. *Williamson v. United States*, 512 U.S. 594, 605, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) ("we need not decide whether the hearsay exception for declarations against interest is 'firmly rooted' for Confrontation Clause purposes").[1] Since the district court ruled in this case, however, this court has held that the hearsay exception for statements against penal interest constitutes a firmly rooted exception for purposes of Confrontation Clause analysis. *See Neuman v. Rivers*, 125 F.3d 315, 319–320 (6th Cir. 1997).[2] Given that one panel of this court may not overrule the published decision of another panel, *see, e.g., United States v. Washington*, 127 F.3d 510, 517 (6th Cir.

1997), *Neuman* will control the outcome of this case unless it is distinguishable. Despite petitioner's attempts to draw a distinction between the cases, we conclude that they are sufficiently similar for *Neuman* to control.

The statement given by Moore to the authorities, which was summarized in the passage of the Ohio Supreme Court's opinion cited earlier, is sufficiently inculpatory to satisfy the *Williamson* requirements. *See Williamson*, 512 U.S. at 600–01, 114 S.Ct. 2431 (Fed.R.Evid.804(b)(3) allows admission of self-inculpatory statements). Moore discussed his activities *during* a robbery, rendering them almost by definition self-inculpatory. In addition to the statements constituting a declaration against interest (and thereby falling within a firmly rooted exception to the hearsay rule), other factors also support our belief that the statement bore "sufficient indicia of reliability" to ensure that petitioner's Confrontation Clause rights were not violated: Moore had received his *Miranda* warnings; there is no allegation that his statement was coerced; and, he did not make his statement in exchange for favorable treatment. Accordingly, we conclude that petitioner's Sixth Amendment right to confront adverse witnesses was not violated by the admission of Moore's statement.

### B. Harmless Error

■ In the alternative, we hold that any error in the admission of the statement at issue is harmless. Petitioner argues that this court should apply the "harmless beyond a reasonable doubt" standard of review enunciated by *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), instead of the "sub-

---

1. We note that the Supreme Court recently heard oral argument in a case that may well resolve this question. *See Lilly v. Virginia*, —— U.S. ——, 119 S.Ct. 443, 142 L.Ed.2d 398 (1998) (grant of certiorari). Because, as explained *infra*, we base our holding today on the alternative ground that any error in admitting Moore's statement constituted harmless error, we have elected not to await the issuance of an opinion in *Lilly*.

2. As in the instant case, *Neuman* involved the state counterpart to Fed. R. Evid 804(b)(3). In *Neuman*, we observed: "[I]f we find that the state court's rulings satisfied the federal rule, they almost certainly pass constitutional muster." *Neuman*, 125 F.3d at 319 n. 1.

stantial and injurious effect" standard of *Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). According to petitioner, the former standard is appropriate when the federal district court is the first court to review for harmless error. *See Orndorff v. Lockhart,* 998 F.2d 1426, 1430 (8th Cir.1993). The majority of circuits have rejected *Orndorff,* however. *See, e.g., Sherman v. Smith,* 89 F.3d 1134, 1141 (4th Cir.1996) (*Brecht* standard applies to all federal habeas proceedings); *Davis v. Executive Director of Dep't of Corrections,* 100 F.3d 750, 772 n. 20 (10th Cir.1996) (same); *Horsley v. Alabama,* 45 F.3d 1486, 1492 n. 11 (11th Cir. 1995) ("*Brecht* rule reaches to almost all federal habeas cases"); *Tyson v. Trigg,* 50 F.3d 436, 446–47 (7th Cir.1995) (federal habeas corpus courts should apply the *Kotteakos* standard even if state courts have not conducted a *Chapman* analysis).

While this circuit appears not to have weighed in explicitly on the issue, we recently applied *Brecht* harmless error analysis to a Confrontation Clause challenge despite the fact that it does not appear that the state court engaged in harmless error analysis. *See Norris v. Schotten,* 146 F.3d 314, 330 (6th Cir.1998). We now explicitly adopt the position taken by the majority of our sister circuits and hold that the harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error.

■ Under the *Brecht* standard, even if we assume for the sake of argument that use of Moore's statement constituted error, we hold that any error did not have a "harmful or injurious effect" on the fundamental fairness of the trial. As the government points out, other evidence corroborates the conclusions drawn from Moore's statement. A witness who lived close to the store testified that she saw two males laughing and running to Moore's vehicle; Moore then asked, "How much did you get?" Petitioner admitted that he drove to the store with Treadwell and Moore and

that he left in Moore's car. Given these facts, any error was harmless.

## III.

For the foregoing reasons, the denial of the petition is **affirmed**.

GILMAN, Circuit Judge, concurring.

I agree with the majority's conclusion that the harmless error analysis set forth in *Brecht v. Abramson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) applies to the present case. Under that standard, any error committed by the trial court in admitting Moore's statement in its entirety was harmless. I therefore concur in the result reached by the majority.

I write separately, however, to express my belief that the trial court erred when it admitted Moore's entire statement to the police, instead of admitting only those portions of the statement that were self-inculpatory. In *Williamson v. United States,* 512 U.S. 594, 599, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the Supreme Court defined the term "statement" in Rule 804(b)(3) of the Federal Rules of Evidence to mean "a single declaration or remark" rather than "a report or narrative." *See id.* The Court cautioned against the wholesale admission of confessions that are partially self-inculpatory:

> The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.

*Id.* at 599–600, 114 S.Ct. 2431. The Court held that Rule 804(b)(3) does not allow the admission of non-self-inculpatory statements made within the context of a generally inculpatory narrative, because "the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." *See id.* at 600–01, 114 S.Ct. 2431. Trial courts must thus determine the admissibil-

996

ity of each separate remark within a narrative. *See id* at 601, 114 S.Ct. 2431.

In the present case, Moore attempted to shift primary blame for the robbery from himself to Gilliam and Treadwell. He stated that they kept their plans from him and that he did not learn of the robbery until after it had happened. To the extent that such a statement attempts to assign blame for the robbery, it was neither fully against Moore's interest nor reliable under *Lee v. Illinois*, 476 U.S. 530, 545, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) ("[A] codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another."). Our opinion should therefore not be construed to permit the wholesale admission of a narrative simply because it contains discrete statements that are against the declarant's penal interest.