*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0352P (6th Cir.)
File Name: 00a0352p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

DONALD RICHARD
MCCLESKEY, JR.,
    *Defendant-Appellant.*

No. 98-4341

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 95-00010—Walter H Rice, Chief District Judge.

Argued: April 26, 2000

Decided and Filed: October 4, 2000

Before: RYAN and BOGGS, Circuit Judges; DUGGAN,
District Judge.*

_____

*The Honorable Patrick J. Duggan, United States District Judge for
the Eastern District of Michigan, sitting by designation.

———————————

**COUNSEL**

**ARGUED:**    Michael B. Cohen, Chicago, Illinois, for Appellant.    Margaret Mary Quinn, ASSISTANT U.S. ATTORNEY, Dayton, Ohio, for Appellee.  **ON BRIEF:** Michael B. Cohen, Chicago, Illinois, for Appellant. Margaret Mary Quinn, ASSISTANT U.S. ATTORNEY, Dayton, Ohio, for Appellee.

RYAN, J., delivered the opinion of the court. DUGGAN, D. J. (pp. 10-11), delivered a separate concurring opinion. BOGGS, J. (pp. 12-14), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

RYAN, Circuit Judge.    Defendant Donald Richard McCleskey, Jr., was convicted and sentenced for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846; use of a telephonic device in the commission of a felony, in violation of 21 U.S.C. § 843(b); and attempt to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1).  We are required to decide whether oral and written statements given by McCleskey's accomplice Milton Rand, prior to trial, inculpating both himself and McCleskey, were properly admitted against McCleskey as statements against interest under Fed. R. Evid. 804(b)(3).  We hold that the statements should not have been admitted because they violate McCleskey's rights under the Confrontation Clause of the Sixth Amendment.  Therefore, we will reverse McCleskey's conviction and remand his case for a new trial.

In the instant case the declarant's inculpation of himself in the role of "mule" was total.  There was no effort to shift this guilt.   The only question was the circumstances of his transportation, and who he dealt with in this role.  Thus, it seems to me that this statement classically meets the requirements of Rule 804(b)(3) in that "a reasonable person in the declarant's position would not have made the statement unless believing it to be true."  If anything, inculpating a specific (and correct) source heightened the self-inculpation of the declarant, and made it easier to amass additional evidence of his role in the operation (further, a lie in the additional information might have been easy to detect, thus heightening the corroboration, if any were needed, of his statement).   Weinstein's Federal Evidence, § 804.o6[b], argues that "far fewer dangers are involved when the inculpatory statement does not implicate the accused in the *same crime* in which declarant is accused of having participated" (emphasis added), and uses the example of an admission of the theft of certain goods by the declarant, used to inculpate a person accused of receiving those stolen goods. Here, Rand confessed to carrying drugs, and the statements are to be used in the trial of a person who provided him the drugs for the transportation, a relation rather similar to the situation set out by Weinstein.

For the foregoing reasons, I respectfully dissent.

## I.

In December 1994, a vehicle being driven by Milton Rand was stopped for speeding in St. Louis County, Missouri. The demeanor and mutually inconsistent statements of Rand and his passenger, Joyce Daniels, aroused the suspicions of the police, who asked for permission to search the vehicle.  Rand and Daniels both consented freely.   The police found six kilograms of cocaine in a black duffel bag in the trunk of the car.  Rand and Daniels were arrested, read their rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and brought to the headquarters of the St. Louis County Police Department "drug office."

At headquarters Rand was again advised of his *Miranda* rights, but nonetheless indicated his willingness to cooperate with the arresting authorities.  He admitted to being a drug courier or "mule" engaged in the transportation of cocaine from Los Angeles, California, to Dayton, Ohio.   He acknowledged making about four such trips between September and December 1994, all on behalf of the defendant, McCleskey. Each trip involved the transportation of between two and eight kilograms of cocaine. Rand signed a written confession.

Rand thereafter continued to cooperate with authorities to the extent of participating in a "controlled delivery" of six kilograms of ersatz cocaine to McCleskey on December 27, 1994. This delivery was audiotaped and monitored, as was a telephone call from Rand to McCleskey just prior to the delivery.

Ten days later, on January 6, 1995, Rand appeared at the offices of Daniels's counsel, wrote an unsworn statement recanting all portions of his previous confession which implicated McCleskey, and then went into hiding.  The district court issued a warrant for Rand's arrest on January 13, 1995. On January 18, 1995, Rand, Daniels, and McCleskey were indicted by the grand jury.  Rand's whereabouts remained unknown.

McCleskey was charged in four counts of the indictment: one count of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count 1); one count of use of a telephonic device in the commission of a felony, in violation of 21 U.S.C. § 843(b) (Count 3); one count of attempt to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 4); and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count 5).

Before trial, with Rand still at large, the government moved that Rand's post-arrest statements be admitted as evidence against McCleskey. The district court ruled that the self-inculpatory portions of Rand's statements were admissible as "statements against interest" by an unavailable declarant under Fed. R. Evid. 804(b)(3), but that the noninculpatory portions were not admissible. Consequently, at trial, Rand's arresting officers were permitted to testify, over McCleskey's objections, to the portions of Rand's confession that were ruled admissible, which included Rand's self-inculpatory description of four trips to Los Angeles to procure cocaine on McCleskey's behalf, but which also included statements that were very inculpatory of McCleskey.

McCleskey was found guilty of Counts 1, 3, and 4 in May 1997. In December 1997, Rand was arrested and returned to federal custody. As McCleskey's sentencing had not yet occurred, Rand was able to appear at the sentencing hearing, where he testified to not four but approximately 21 trips as a cocaine courier for McCleskey. With the benefit of Rand's new testimony, the district court found the defendant responsible for 88 kilograms of cocaine, and imposed concurrent sentences of 292, 48, and 292 months' imprisonment. McCleskey's timely appeal followed.

## II.

McCleskey makes three assignments of error: (1) that the district court erred in admitting Rand's statements against McCleskey because they are inadmissible hearsay; (2) that the

have brought these statements under the umbrella of their defendant-exculpatory cousins, requiring a showing of further "indicia of reliability" to overcome a presumption that they are suspect. *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 804.06[6] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 2000) (citing cases).

This court has not, however, joined those circuits' approach to this issue. Rather, we have specifically upheld the introduction of such evidence without a further reliability analysis in exactly the situation faced by McCleskey, namely, when the prosecution seeks to admit a statement against a declarant's penal interest that inculpates the defendant. In *Neuman v. Rivers*, 125 F.3d 315, our court upheld the ruling of District Judge Duggan allowing the introduction of a statement by a father, at his son's trial, that he had sodomized at gunpoint a female acquaintance of the son, and fired a gun in the air; the father had been tried separately, and refused to testify since his case was on appeal. The son was on trial for criminal sexual conduct on the same occasion, as well as use of a firearm during a felony and felonious assault on yet another party. We held that "the admission of out-of-court statements of unavailable hearsay declarants pursuant to 'firmly rooted' exceptions to the hearsay rule does not violate the Confrontation Clause, because the statements are presumed to bear adequate indicia of reliability." *Id*. at 319 (citing *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)), and we went on to rule that "[t]he district court correctly held that [the father's] out-of-court statements were admissible under the declaration against penal interest exception to the hearsay rule, a 'firmly rooted' exception." *Ibid*. Further, in *Gilliam v. Mitchell*, 179 F.3d 990, 994, we wrote in passing of "statements constituting a declaration against interest (and thereby falling within a firmly rooted exception to the hearsay rule) . . . ." Dicta in that case make it clear that we would have upheld the admission of such a statement inculpating the defendant, without further reliability analysis; the holding of the case, however, was based upon a finding of harmless error.

---

## DISSENT

---

BOGGS, Circuit Judge, dissenting.  The court's opinion carefully sets out the basic facts and framework for this case, down to near the bottom of page 6.  However, in my opinion it thereafter goes astray, both factually and legally.  A brief review of the relevant evidentiary rule is in order.

Fed R. Evid. 804(b)(3) excepts from exclusion as hearsay statements against the unavailable declarant's own penal interest.  The Supreme Court has held that the admission into evidence of an unavailable declarant's out-of-court statement does not violate the Confrontation Clause when it "falls within a firmly rooted hearsay exception."  *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  The Supreme Court has declined to address whether statements against penal interest do, in general, fall within that exception.  *See Williamson v. United States*, 412 U.S. 594, 605 (1994).  The circuits, as the Court noted, are divided on this question.  But, as will be explored *infra*, this court has held that such statements do fall within such a firmly rooted exception.

When such a statement in addition contains material *exculpating* a defendant who seeks its admission, its reliability does become suspect and requires further analysis. The Rule requires that "corroborating circumstances clearly indicate the trustworthiness of the statement."  Fed. R. Evid. 804(b)(3).  *See, e.g., United States v. Hilliard*, 11 F.3d 618, 619-20 (6th Cir. 1993), *cert. denied*, 510 U.S. 1130 (1994) (holding such a statement improperly excluded when corroborating evidence not weighed by trial court).

Conversely, the Rule requires nothing additional for admission of a statement against penal interest when it contains material that *inculpates* a defendant whose prosecutor seeks its admission.  The Supreme Court also explicitly declined to address this circumstance.  *See Williamson*, 512 U.S. at 605.  But many of our sister circuits

district court erred in considering Rand's testimony at the sentencing hearing; and (3) that the district court erred in finding Rand's testimony to be credible.  Because we agree with McCleskey's first assignment of error, we need not address his remaining arguments.

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees to every criminal defendant the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  This right of confrontation has been interpreted as a right to subject the testimony of witnesses against the defendant to adversarial cross-examination. The law construing the Sixth Amendment right of confrontation and the evidentiary law of hearsay run along essentially parallel lines.  A violation of one is generally, although not always, a violation of the other.

However, some types of statements, and some statements uttered in particular, well-defined contexts, usually those understood in federal evidentiary law to be within a codified exception to the hearsay rule or those labeled "not hearsay," are judged to be sufficiently reliable to permit the government to deny a defendant the right to subject them to cross-examination.  Specifically, the Supreme Court has ruled that out-of-court declarations that are, by definition, "hearsay" are nevertheless admissible where the declarant is unavailable to testify at trial, providing the hearsay statements bear "adequate 'indicia of reliability.'"  *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

> Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.*

Here, the defendant challenges whether Rand's statement "falls within a firmly rooted hearsay exception."

Federal Rule of Evidence 804 provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

   **(3) Statement against interest.**  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed. R. Evid. 804(b).

   After indicating his understanding that the admissibility of Rand's statement was governed by the "statements against interest rule," the trial judge carefully examined Rand's written statement, as well as three reports written by law enforcement officials describing Rand's statement and the circumstances under which he provided it.  The court then carefully redacted those sentences of the statement and the reports which contained *no* self-inculpatory elements, and admitted all other sentences—those containing some self-inculpatory element—as statements against Rand's interest under Fed. R. Evid. 804(b)(3).  In each case the result of this redaction is a set of sentences inculpatory of Rand, but also highly inculpatory of McCleskey.

   The court's ruling reveals a misunderstanding of Rule 804(b)(3).  In the vast majority of instances in which Rule 804(b)(3) is relied upon, it is the defendant who relies upon the Rule to admit a statement, otherwise hearsay, which operates to exculpate him by inculpating the statement's

U.S. 116, 119 S. Ct. 1887, 144 L. Ed. 2d. 117 (1999), in which four justices expressly stated:

The decisive fact, which we make explicit today, is that accomplice's confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence.

*Id.* at 134, 119 S. Ct. at 1899.  This statement, coupled with Justice Scalia's concurring opinion that the admission of certain out-of-court statements represent a "paradigmatic Confrontation Clause violation," lead me to believe that the Supreme Court would find the admission of the out-of-court statements in this case to be impermissible.  *Id.* at 143, 119 S. Ct. at 1993.

   Because I agree with Judge Ryan that those portions of a declarant's statement that directly inculpate a defendant are inadmissible hearsay when offered by the government against the defendant, even though the statements may (also) be against the declarant's penal interest, I concur with his conclusion that defendant's conviction must be reversed.

---

### CONCURRENCE

---

DUGGAN, District Judge, concurring.  Although I concur in Judge Ryan's opinion,  I write separately to address the statement by the dissent that this Court, affirming "the ruling of District Judge Duggan," has "specifically upheld the introduction of such evidence without a further reliability analysis in exactly the situation faced by McCleskey, namely, when the prosecution seeks to admit a statement against a declarant's penal interest that inculpates the defendant," citing *Neuman v. Rivers*, 125 F.3d 315 (6th Cir. 1997).

In *Neuman,* I ruled, and this Court affirmed, that the trial judge had properly admitted, at the request of the government, the out-of-court statements of the defendant's then "unavailable" father under Federal Rule of Evidence 804(b)(3).  However, I disagree with the dissent that the father's out-of-court statements in *Neuman* inculpated the defendant.  As Judge Boggs noted in *Neuman*, "[t]he trial court admitted testimony . . . that [the father] had confessed to having oral sex with the complainant, and to firing a gun into the air." *Neuman,* 125 F.3d at 319.  Such statements *only* inculpated the father, making no mention whatsoever of the defendant.  That fact, in my view, distinguishes *Neuman* from this case, in which the declarant's statements clearly inculpated McCleskey.

Furthermore, Judge Boggs is correct that in my opinion in *Neuman* I stated that the father's statements were "against [his] penal interests, a firmly rooted hearsay exception," citing Rule 804(b)(3).  I did not, however, rule that an out-of-court statement by a declarant *that directly inculpates the defendant*, such as in this case, is admissible as a "firmly rooted hearsay exception."

Moreover, this Court's decision in *Neuman* was issued on February 16, 1996.  On June 10, 1999, the United States Supreme Court rendered its decision in *Lilly v. Virginia*, 527

declarant. *See, e.g.*, *United States v. Price*, 134 F.3d 340 (6th Cir.), *cert. denied*, 525 U.S. 845 (1998); *United States v. Paguio*, 114 F.3d 928 (9th Cir. 1997); *United States v. Innamorati*, 996 F.2d 456 (1st Cir. 1993).   Under such circumstances, the out-of-court statement is marked by significant indicia of reliability: a reasonable person who was not guilty of a crime would not normally falsely inculpate himself for the purpose of falsely exculpating another.

However, where, as here, it is the government which seeks to introduce a statement, otherwise hearsay, which inculpates its declarant but which, in its detail, also inculpates the defendant by spreading or shifting onto him some, much, or all of the blame, the out-of-court statement entirely lacks such indicia of reliability.  It is garden variety hearsay as to the defendant and it does not lose that character merely because it in addition reliably inculpates the declarant.  Indeed, an alleged coconspirator in the custody of law enforcement officials will generally have a salient and compelling interest in incriminating other persons, both to reduce the degree of his own apparent responsibility and to obtain lenience in sentencing.  The ordinary Rule 804(b)(3) statement against interest, by contrast, inculpates the declarant and either explicitly or implicitly exculpates the defendant on trial.

The Supreme Court has stated:

[The] truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination.  As has been noted, such a confession is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. . . .   More than this, however, the arrest statements of a codefendant have traditionally been viewed with special suspicion.  Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence. . . .

. . . [W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination.

*Lee v. Illinois*, 476 U.S. 530, 541 (1986) (internal quotation marks and citations omitted).

For these reasons, it is clear that Supreme Court Confrontation Clause jurisprudence does not permit the introduction of hearsay declarations uttered by accomplices in law enforcement custody that inculpate a defendant, absent further "particularized guarantees" of the declaration's trustworthiness.

The question then is whether Rand's statement incriminating both himself and McCleskey bears guarantees of trustworthiness sufficient to rebut its presumptive unreliability. Although some details of Rand's confession were borne out at trial—by the testimony of Rand's Los Angeles supplier, the tape of the controlled delivery, and some telephone and hotel records—the Supreme Court has unambiguously held that "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its *inherent* trustworthiness, not by reference to other evidence at trial." *Idaho v. Wright*, 497 U.S. 805, 822 (1990) (emphasis added). Thus, we must look to the statement itself and to the circumstances of its delivery for evidence of its *inherent* reliability.

The declarant had been advised of his *Miranda* rights; his confession was voluntary for Fifth Amendment purposes; he was aware that he was exposing himself to criminal liability; and there was no express promise of leniency in exchange for his cooperation. While these factors are strong indicators that Rand's statement was voluntary and therefore presumptively reliable *as to himself*, they offer no basis for finding the necessary circumstantial guarantees of trustworthiness as to the portion inculpating McCleskey. Manifestly, Rand had a

strong interest in shifting at least some of the responsibility from himself and onto McCleskey.

Because of the evident confusion of both the distinguished district court and the government as to the proper application of Fed. R. Evid. 804(b)(3), it is well worth clarifying the following point: for the very reasons articulated above, the confession of an accomplice delivered while in police custody, inculpating a defendant, though the accomplice be unavailable at the time of trial, is classic, inadmissible hearsay, when offered by the government, *regardless* of the constitutional concern. Because of the incentive brought to bear upon such an accomplice to shift and spread blame to other persons, such a confession cannot be said to be "[a] statement which . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3). In addition, inclusion of the evidence violated McCleskey's Sixth Amendment rights, for the same reasons.

Although, for the reasons we have discussed, introduction of Rand's statement was error, we ought not reverse McCleskey's conviction if the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). To be sure, Rand's controlled delivery of ersatz cocaine was taped, and that tape was presented at trial. In addition, a government witness testified to McCleskey's role as a large-scale dealer in cocaine. Nevertheless, we cannot conclude that this evidence, absent the portions of Rand's detailed statement which so heavily inculpated McCleskey, would have been sufficient to prove McCleskey's guilt beyond a reasonable doubt.

### III.

For the reasons described above, the defendant's conviction is **REVERSED**, and his case **REMANDED** for further proceedings not inconsistent with this opinion.