**Michael HICKS, Petitioner,**

v.

**Dennis M. STRAUB, Respondent.**

No. 01–70951.

United States District Court, E.D. Michigan, Southern Division.

Jan. 7, 2003.

Carole M. Stanyar, Detroit, MI, for Petitioner.

Brad H. Beaver, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent.

## AMENDED OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

### I. *Introduction*

Petitioner Michael Hicks, through his attorney, Carole Stanyar, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. Petitioner is currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan. He challenges his 1993 conviction for first-degree murder and possession of a firearm during the commission of a felony. The Court finds that Petitioner's right of confrontation was violated and that the error was not harmless, and that Petitioner was denied his Sixth Amendment right to the effective assistance of counsel. The Court shall therefore conditionally grant a writ of habeas corpus.

### II. *Procedural History*

Following a jury trial in Calhoun County Circuit Court, Petitioner was convicted of first-degree murder and possession of a firearm during the commission of a felony. On December 3, 1993, Petitioner was sentenced to two years imprisonment for the felony-firearm conviction and life imprisonment for the murder conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. Defendant Michael Hicks was denied a fair trial by the prosecutor's numerous instances of misconduct, including arguing matters not in evidence, such as defendant's supposed admission to committing the murder, and by repetitively cross-examining defendant on the irrelevant matter of his being a marijuana dealer.

II. The circuit judge erred in admitting irrelevant and prejudicial evidence that defendant Hicks was unemployed but had $1,200 in cash at the time of his arrest, of a .380 shell casing, although the victim was killed with a 9 mm. bullet, and of a rock of crack cocaine found in defendant's truck.

III. Michael Hicks was denied his state and federal constitutional rights to due process where the identification at trial by Norma Lewis resulted from the suggestive trial confrontation that was conducive to misidentification and where the totality of the circumstances showed no foundation of reliability.

IV. Because of defense counsel's failures Michael Hicks was denied his rights to the effective assistance of counsel, to present an effective defense, and to a fair trial.

Petitioner also filed a motion for remand to the circuit court for further proceedings regarding the claims that the identification by Norma Lewis was tainted and that Petitioner received ineffective assistance of counsel. The Michigan Court of Appeals denied the motion to remand, *People v. Hicks*, No. 171833 (Mich.Ct.App. Dec. 6, 1995), and affirmed Petitioner's conviction and sentence. *People v. Hicks*, No.

---

1. Staff Attorney Mary Beth Collery provided quality research assistance.

171833, 1996 WL 33348772 (Mich.Ct.App. Nov. 6, 1996).

Petitioner then filed a delayed application for leave to appeal to the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals, and a motion to remand for an evidentiary hearing regarding Petitioner's claims that Norma Lewis' identification was tainted and that Petitioner's defense counsel was ineffective. The Michigan Supreme Court denied leave to appeal and denied the motion for remand on November 7, 1997. *People v. Hicks,* 456 Mich. 886, 570 N.W.2d 659 (Mich.1997).

On January 26, 1999, Petitioner filed a petition for a writ of habeas corpus in this Court. On September 29, 1999, the Court approved and entered a Stipulation to Dismiss Petition Without Prejudice, in which Petitioner's counsel and Respondent's counsel agreed that "the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1) shall be tolled for the period that this action has been pending." *Hicks v. Straub,* No. 99–70299 (E.D.Mich. Sept. 29, 1999) (Cleland, J.).

On January 29, 1999, Petitioner filed a motion for relief from judgment in the trial court, claiming that Petitioner's rights under the Confrontation Clause had been violated when the prosecutor advised jurors that Petitioner had confessed to a fellow inmate and the witness to the alleged confession was never produced. Petitioner also claimed that defense counsel was ineffective for failing to object to the admission of testimony regarding the alleged confession. Further, Petitioner claimed that the trial court's instructions failed to remedy the resulting prejudice to Petitioner. The trial court denied the motion for relief from judgment. *People v. Hicks,* No. 93–2188FC (Calhoun County Circuit Court March 16, 2000).

Petitioner filed a delayed application for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals, presenting the following claims:

II. The trial court was clearly erroneous in rejecting defendant-appellant's claim that he was deprived of the effective assistance of counsel when trial counsel failed to object or move for mistrial based upon an obvious deprivation of the right to confront witnesses following the prosecutor's unsupported statement to the jury that the defendant had confessed, and where appellate counsel failed to frame this issue properly as the deprivation of the right to confront witnesses in violation of the Sixth Amendment.

III. The trial court was clearly erroneous in refusing even to consider the defendant's claim (based upon newly discovered evidence) that he was denied due process and was deprived of the opportunity to conduct a *Wade* hearing where an identifying witness was subjected to a blatantly suggestive courtroom identification "procedure", where the facts of record establish convincingly that the witness had failed to identify the defendant before, and had no independent basis to attempt an identification at trial, and where defense counsel was ineffective variously by failing to impeach the witness based upon her prior failure to identify, by failing to ask for a *Wade* hearing during trial, or by failing to ask for a mistrial to cure the error.

The Michigan Court of Appeals denied leave to appeal. *People v. Hicks,* No. 226074 (Mich.Ct.App. Aug. 11, 2000).

Thereafter, Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hicks,* 463 Mich. 977 (Mich. Feb. 26, 2001).

On March 9, 2001, Petitioner filed the pending petition for a writ of habeas corpus, presenting the same claims presented in his motion for relief from judgment and applications for leave to appeal therefrom. On October 15, 2002, the Court conducted an evidentiary hearing.

### III. *Facts*

Petitioner's conviction arises out of the shooting death of Shawn Stalworth on July 25, 1993, in Battle Creek, Michigan. On that date, Mr. Stalworth was shot as he was walking out of his house, near the intersection of Kendall and Champion Streets. He died from his wounds.

Norma Lewis testified that on July 25, 1993, she was driving toward the intersection of Kendall and Champion Streets, sometime between noon and 12:30 p.m. She saw two men walking down the street, one behind the other. The man walking in front was wearing a blue shirt, and the one walking behind was wearing a red shirt. She testified that she saw the man with the blue shirt look over his shoulder, then start to try to run away. The man in the red shirt knocked the man in the blue shirt to the ground, and stood over him. Ms. Lewis testified that she saw the man in the blue shirt put his hand over his face and then the man in the red shirt shot him twice. Ms. Lewis then left the scene. Ms. Lewis testified that the man in the red shirt was wearing a light colored hat and black tennis shoes. She described the man in the red shirt as follows: dark-skinned black male, with a husky build, medium height, weighing between 170 and 200 pounds. At trial, Ms. Lewis identified Petitioner as the man who had been wearing the red shirt. She based this identification primarily upon Petitioner's eyes, which Ms. Lewis said were the same as the man's who had committed the shooting.

Leland Ellis testified that he lived on Champion Street in Battle Creek, and was sitting on his front porch on the morning of July 25, 1993, at approximately 11:30 a.m. Mr. Ellis saw a Ford Bronco drive down the street, turn around in a driveway across the street from Mr. Ellis's house, then park on the street a few houses down from his. He noticed a female sitting in the front passenger seat. He identified her as being either a white woman or a light-skinned black woman. He also noticed that the first letter of the license plate was an "F." Mr. Ellis observed the driver of the Bronco, a black male, exit the truck, and walk toward an empty lot. Mr. Ellis testified that the man was approximately 6'2" and 200 pounds. The man was wearing a black jacket, over a red shirt, full length trousers, and a dark colored cap. The man walked out of Mr. Ellis's field of vision and, seconds later, Mr. Ellis heard four or five gunshots. He then saw the man walking briskly toward the Bronco. Mr. Ellis noticed the man was carrying a gun.

Lewis Croslin testified that, on the day of the shooting, he lived on Kendall Street in Battle Creek, and was sitting on his front porch, when he saw a dark-colored Bronco drive down the street and park on Champion Street. He did not see anyone get out of the Bronco, but just after the truck was parked he saw a man walk from Champion Street across an adjacent field. The man was wearing a bright red shirt. Mr. Croslin could not say whether the man was wearing any type of head covering. The man crouched down in some weeds in the field, which was approximately fifty to

sixty feet from where Mr. Croslin was sitting. Mr. Croslin watched the man through a pair of binoculars. Mr. Croslin testified that the man was crouched down for three to five minutes, when Mr. Croslin heard a door slam. The man then ran toward the sound. Mr. Croslin testified that he then saw the man in the red shirt run up to another man, shoot him, and then run away. Mr. Croslin saw the man re-enter the Bronco on the passenger side. He testified that someone other than the shooter drove the vehicle away from the crime scene.

Shortly after the shooting, approximately two and a half miles away from the site of the shooting, police began following a black Bronco driven by Petitioner, because it matched the description given of the suspicious vehicle near the shooting site. The vehicle's license plate also contained an "F." Petitioner's girlfriend, Katrina Porter, was a passenger in the truck. The police did not witness anything being thrown from the vehicle. Petitioner parked the Bronco in the driveway of a house on Golden Avenue and then fled into a swamp behind the house. Police officer Robert Corbin testified that he chased Petitioner into the swamp and apprehended him there. Police Officer Corbin further testified that Petitioner was wearing a red shirt, blue shorts, and white tennis shoes when he was apprehended. The police did not see Petitioner with a weapon or throwing one away. A search of the Bronco yielded no gun, but police did find a .380–caliber shell casing and some crack cocaine. No gun was recovered from the area. The police recovered two nine-millimeter casings from the scene of the shooting.

Katrina Porter testified that Petitioner was her boyfriend, and that they arrived in Battle Creek on Saturday, July 24, 1993. She testified that, after spending the night at a man's apartment, she and Petitioner drove around Battle Creek on Sunday morning. Ms. Porter testified that she never saw Petitioner carrying a weapon. She testified that she and Petitioner stopped on a side street for a few minutes that morning, and that Petitioner went into a house. When Petitioner returned to the vehicle, he put a package in her purse, which was later found to contain $1,200 in cash. Ms. Porter identified photographs of the house and surrounding area where she and Petitioner stopped that morning. The house and surrounding area identified by Ms. Porter were not the same as the area where Shawn Stalworth was killed.

Petitioner testified in his own defense. He denied shooting Shawn Stalworth and denied carrying any weapon. Petitioner, who admitted to being a marijuana dealer, testified that, on the morning of the shooting, he and Ms. Porter drove to Petitioner's friend Ray's house on Warren Street to pick up money from the sale of marijuana. Petitioner retrieved the money, $1,200, and gave it to Ms. Porter. After picking up the money, Petitioner noticed that a police car was following him. He testified that he pulled into a driveway, hoping that the officer would drive by. When the police officer stopped, Petitioner fled because he feared being arrested for driving on a suspended license.

## IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the

AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> I. The trial court was clearly erroneous in rejecting defendant-appellant's claim that he was denied his constitutional right to confront witnesses against him when the prosecutor advised the jury during opening statement that defendant had confessed to the murder, where the prosecutor without even the pretense of due diligence failed thereafter to produce the witness to the alleged confession, where defense counsel never responded to the issue of the "confession" in any way, and where the trial court's instructions failed utterly to remedy the enormous prejudice to the defendant.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

**2.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 1521. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...

[A]n unreasonable application of federal law is different from an incorrect application of federal law .... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1521–22.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

## V. *Discussion*

### A. *Confrontation Clause Claim*

Petitioner claims that he was denied a fair trial because the prosecutor, in his opening statement, stated that a prosecution witness would testify that Petitioner confessed to the shooting, but the prosecutor failed to produce this witness at trial. Petitioner claims that the prosecutor's discussion of this witness's anticipated testimony and subsequent failure to produce the witness violated his Sixth Amendment right "to be confronted with the witnesses against him."

In his opening statement to the jury, the prosecutor stated, in pertinent part:

Defendant was arrested. He was charged. He was arraigned. He was taken to the City of Battle Creek lockup, not the county jail, but the lockup pending transfer, moving him over here. While he was there there was another person in the lockup. He goes, hey, my mom just saw you on a videotape. 'Cause guess what happened? As this Defendant was running through the swamp, I believe Channel 1 was circling the area and one of the cameramen happened to film this Defendant coming out of the swamp. He said my mom told me she just saw a person and they accused him of homicide. You kill that man? What did he say? Yep, yep.

Tr., 11/16/93, p. 20.

At the close of the prosecution's case, the prosecutor informed the court that the witness to whom Petitioner allegedly confessed, Lorenzo Brand, had not been located, and that he did not believe the State's efforts to find Mr. Brand established due diligence. Petitioner claims that this violated his right of confrontation.

### 1. Procedural Default

Respondent argues that this claim is barred from review in this Court because it is procedurally defaulted. Respondent claims that this issue was presented on direct appeal only in the context of prosecutorial misconduct, and not presented in the context of a Confrontation Clause violation until Petitioner filed his motion for relief from judgment in the trial court. Respondent further argues that, on collateral review, the state court relied on an adequate and independent state procedural rule in denying relief with respect to the Confrontation Clause claim and that the claim is therefore procedurally defaulted. Petitioner argues that, although the phrase "confrontation clause" was not used in his state court briefs on direct review, the claim was nevertheless fairly presented to the state courts.

 "A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts." *McMeans v.*

*Brigano,* 228 F.3d 674, 681 (6th Cir.2000), *citing Franklin v. Rose,* 811 F.2d 322, 324–25 (6th Cir.1987). The Sixth Circuit Court of Appeals does not require invocation of "talismanic words" such as "confrontation clause" to raise a constitutional issue. *See Webster v. Frey,* 665 F.2d 88, 89 n. 1 (6th Cir.1981). Instead, the Sixth Circuit has identified:

> four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented": (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Id.*

█ The Court finds that, while Petitioner could have presented his Confrontation Clause claim on direct review in a clearer manner, this claim was fairly presented to the Michigan state courts on direct review. In his brief to the Michigan Court of Appeals on direct review, Petitioner claimed that the prosecutor engaged in misconduct by referring to a purported confession made by Petitioner to a jailhouse informant and then failing to produce that witness and failing to make a good faith showing of attempting to obtain that witness's presence. In its decision affirming Petitioner's conviction, the Michigan Court of Appeals failed to address the claim as implicating the Sixth Amendment's right of confrontation or the invoking the United States Supreme Court's decision in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

█ The facts and prosecutorial misconduct claim presented by Petitioner in his state court briefs were "well within the mainstream of constitutional law" such that the Michigan state courts should have recognized and addressed the Confrontation Clause issue. *McMeans,* 228 F.3d at 681. Indeed, on collateral review, Petitioner presented the same claim regarding the prosecutor's opening statement, but, this time, Petitioner actually referred specifically to the "Confrontation Clause." In response, the prosecutor argued that the motion for relief from judgment presented only claims that already had been presented to the Michigan Court of Appeals and Michigan Supreme Court. The trial court agreed. *See* Tr., 1/31/00, p. 3. When a state court was properly presented with but fails to recognize or pass upon a constitutional claim, this Court shall not then find that the fault lies with the petitioner. A petitioner's obligation remains only to fairly present the claim, which Petitioner did here.

█ Respondent argues further that the Michigan Supreme Court's denial of Petitioner leave to appeal the trial court's denial of his motion for relief from judgment resulted in a procedural default. In its Order, the Michigan Supreme Court stated that leave to appeal was denied "because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Hicks,* 463 Mich. 978, 623 N.W.2d 599 (2001). Respondent argues that the reference to Michigan Court Rule 6.508(D) constitutes a procedural default. The Court recognizes that, in most circumstances, reference to Michigan Court Rule 6.508(D) is sufficient to invoke procedural default. *See Simpson v. Jones,* 238 F.3d 399, 408 (6th Cir.2000). However, because the claims presented in Petitioner's application for leave to appeal had been presented and denied on direct review, the Michigan Supreme Court's reference to M.C.R.

6.508(D), logically invokes subsection (2) of that rule, which states, in pertinent part:

> (D) ... The court may not grant relief to the defendant if the motion
>> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that retroactive change in the law has undermined the prior decisions ...

M.C.R. 6.508(D).

Rule 6.508(D) is simply a rule of *res judicata* barring a defendant from relitigating claims in a motion for relief from judgment which were decided adversely to him in a prior state court decision. In his application for leave to appeal to the Michigan Supreme Court, Petitioner presented the following claims: that his right of confrontation was violated by the prosecutor's opening statement; that his attorney was ineffective in failing to object to the opening statement; and that the identification testimony of Norma Lew is was the result of an impermissibly suggestive courtroom identification procedure. All of these claims has previously been presented by Petitioner on direct review. Thus, the Michigan Supreme Court's reliance on Michigan Court Rule 6.508(D) is based upon *res judicata* and does not bar federal habeas review of Petitioner's claims. *See Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir.1996); *Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir.1983).

■ The Court concludes that Petitioner's claim regarding the prosecutor's opening statement was fairly presented to the Michigan Court of Appeals and Michigan Supreme Court on direct review. Where a claim is fairly presented in state court, but the state court although denying the claim fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Har-*

*ris v. Stovall*, 212 F.3d 940 (6th Cir.2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

## 2. Substance of Confrontation Clause Claim

■ The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is ... a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect ... from erosion." *Id.*, at 404–05, 85 S.Ct. 1065 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, 85 S.Ct. 1065, *quoting Turner v. State of Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

In *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United

States Supreme Court held that the admission of a non-testifying codefendant's confession that implicates the defendant at a joint trial constitutes prejudicial error, even where the trial court directs the jury that the confession is to be used only against the codefendant, because admission of the confession violates the Confrontation Clause. The Supreme Court recognized that "a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." *Id.* at 126, 88 S.Ct. 1620 (internal quotation omitted). The Supreme Court further held that a limiting instruction would be inadequate to cure the prejudice to a defendant:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.... Such a context is presented here, where the powerfully incriminating statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, .... The unreliability of such evidence is intolerably compounded when the alleged accomplice ... does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Id.* at 135–36, 88 S.Ct. 1620.

■ The Supreme Court's reasoning in finding a Confrontation Clause violation in *Bruton* applies with equal force to the pending case. Petitioner was deprived of the opportunity to cross-examine Lorenzo Brand. Not only was Mr. Brand's incrimi-nation devastating to Petitioner, Mr. Brand's credibility as a jailhouse informant is suspect, at best. *See Byrd v. Collins,* 209 F.3d 486, 546 (6th Cir.2000). The trial court gave the following "curative" instruction to the jury regarding Lorenzo Brand:

> Lorenzo Brand is a missing witness whose appearance was the responsibility of the Prosecution. You may infer that the witness' testimony would not have been favorable to the Prosecution's case.

Tr., 11/18/93, p. 449.

This purported curative instruction cured nothing. In his opening statement, the prosecutor never referred to the person to whom Petitioner allegedly confessed by name, nor was Lorenzo Brand's name ever mentioned at any other point during the trial. Thus, the trial court's cautionary instruction, which simply advised that Lorezno Brand was a missing witness whose appearance was the responsibility of the prosecutor and that the jury could infer that the witness's testimony would not have been favorable to the prosecution, would have been meaningless to the jury. The jurors simply had no reason to identify Lorenzo Brand as the person to whom Petitioner allegedly confessed.

Moreover, as the Court recognized in *Bruton,* there are some contexts in which a curative instruction cannot be accepted as "an adequate substitute for petitioner's constitutional right of cross-examination" because the consequences of the failure of such an instruction would be grave for the defendant. *Bruton,* 391 U.S. at 137, 88 S.Ct. 1620. *See also Dunn v. U.S.,* 307 F.2d 883, 886 (5th Cir.1962) (analogizing the limitations of instructions directing a jury to ignore certain testimony as follows: "[O]ne cannot unring a bell; after the first thrust of the saber it is difficult to say forget the wound; and finally, if you throw a skunk into the jury box, you can't instruct the jury not to smell it."). Thus, as

in *Bruton*, the admission of Mr. Brand's testimony regarding Petitioner's alleged confession, in the absence of Mr. Brand, violated Petitioner's right of confrontation.

The Supreme Court's decision in *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), also supports a finding that Petitioner's right of confrontation was violated. In *Frazier*, the Supreme Court addressed the Confrontation Clause implications when the prosecutor, in his opening statement, briefly referenced anticipated, but never presented, testimony of an individual with whom the defendant was indicted but who pleaded guilty prior to trial, Jerry Lee Rawls. Rawls was called to testify at the defendant's trial, but invoked his privilege against self-incrimination in declining to answer any questions regarding the crime. The Supreme Court found that "some remarks included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable." *Id.* at 736, 89 S.Ct. 1420. In *Frazier*, the Court found that, considering the totality of the circumstances, the prosecutor's opening statement did not constitute prosecutorial misconduct or a deprivation of the right of confrontation. *Id.* at 736–37, 89 S.Ct. 1420. The circumstances considered by the Court in reaching this decision were: the duration of the prosecutor's reference to the never-admitted testimony, the emphasis placed upon that testimony by the prosecutor, the strength of the other evidence presented (in *Frazier*, the prosecution presented evidence the defendant's own confession) the importance of the never-admitted testimony to the prosecutor's case, and the effectiveness of limiting instructions to protect the defendant's constitutional rights. *Id.* at 734, 89 S.Ct. 1420. In *Frazier*, considering these factors, the Court held that the defendant's right to confrontation was not violated.

In the pending case, by contrast, the factors considered by the Court in *Frazier* compel a different conclusion. The prosecutor's improper statement in this case was direct, obvious, and devastating to the defense. Nothing can more swiftly or fatally erode the presumption of innocence than a defendant's purported confession. In addition, in contrast to *Frazier*, and as discussed above, no meaningful curative instruction was given. Moreover, the strength of the evidence identifying Petitioner as the shooter was not so strong as to render the prosecutor's statement regarding Petitioner's alleged confession meaningless.

Thus, the Court concludes Petitioner's right of confrontation was violated by the prosecutor's opening statement. The violation of a defendant's right of confrontation is subject to the harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Therefore, this Court must decide whether that error was harmless. In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *quoting Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (internal quotation omitted). The harmless error analysis articulated in *Brecht* applies even if a federal habeas court is the first to review for harmless

error. *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999).

▉▉▉▉ The Court first addresses Respondent's argument that the prosecutor's failure to produce Lorenzo Brand *"was a fortunate turn of events for Petitioner."* Respondent's brief at 8 (emphasis in original). Respondent argues that Petitioner not only was not prejudiced by the prosecutor's opening statement, but actually benefitted from it. In essence, Respondent argues that because Lorenzo Brand's testimony, as represented by the prosecutor, incriminated Petitioner, Petitioner enjoyed a windfall from the prosecutor's failure to produce Brand at trial. Such reasoning wholly ignores a defendant's rights under the Confrontation Clause. This argument presumes Mr. Brand to be a credible witness and ignores the very right protected by the Confrontation Clause, that is, the Confrontation Clause permits "the accused ... an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Douglas v. Alabama,* 380 U.S. 415, 418–19, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), *quoting Mattox v. U.S.,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409. Respondent's argument, followed to its logical conclusion, would deprive a defendant of the right to confront any witness who, based upon the prosecutor's representations, would give testimony tending to incriminate a defendant. Pursuant to Respondent's reasoning, a defendant would somehow benefit if such a witness did not actually stand up in court and accuse the defendant. Such reasoning exacerbates the very error it is raised to defend. The right of confrontation is a fundamental, constitutionally protected right worthy of more respect.

Lorenzo Brand's statement provided direct evidence of a disputed element—the identity of the shooter. Improperly admitted alleged statements which directly incriminate a defendant have been held to be far more detrimental to a defendant's rights under the Confrontation Clause than those that inferentially incriminate a defendant:

> In determining whether the admission of a confession by a non-testifying co-defendant violates the Confrontation Clause, the Supreme Court has recognized that confessions that "expressly implicate" a defendant are "powerfully incriminating." *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). As opposed to evidence that is incriminating only when the jury makes an inference or when linked with other evidence, direct evidence is "more vivid than inferential incrimination, and hence more difficult to thrust out of mind." *Id.*

*Bulls v. Jones,* 274 F.3d 329, 336–37 (6th Cir.2001).

▉▉▉▉ Improperly admitted evidence takes on a grave importance when, as here, it is the primary, direct evidence linking a defendant to a crime. *See Vincent v. Parke,* 942 F.2d 989, 992 (6th Cir. 1991). Evidence was presented linking Petitioner to the murder, but most of that evidence was circumstantial. In addition, a significant amount of evidence was presented from which a jury could have concluded that Petitioner was *not* involved in the shooting. Only one witness gave direct testimony linking Petitioner to the shooting—Norma Lewis. Ms. Lewis identified Petitioner as the shooter, but her identification testimony was not overwhelmingly persuasive. First, Ms. Lewis was asked whether Petitioner looked "sim-

ilar" to the person she saw pull the trigger. She answered, "yes." She was then asked whether Petitioner was the person who pulled the trigger. She replied, "He looks to be that man, yes, sir." She based this identification testimony largely on Petitioner's eyes, which she said were the same eyes as the gunman's, who she viewed from a distance of over 100 feet. Yet, when Ms. Lewis was questioned by police following the shooting, she never mentioned the gunman's eyes. Ms. Lewis also testified that the gunman was wearing black shoes. Petitioner was wearing white shoes when he was apprehended.

In addition, the witnesses who gave circumstantial evidence linking Petitioner to the crime, also gave testimony from which a jury could reasonably conclude that Petitioner was not the shooter. Leland Ellis testified that the shooter was wearing full-length trousers. Petitioner was wearing shorts when apprehended. Lewis Croslin testified that, after the shooting, the gunman got into the passenger side of the Bronco, which was driven by someone else. When police began following Petitioner, he was driving the Bronco and his girlfriend was in the passenger seat.

While this Court does not retrospectively discredit the credibility of the prosecution's witnesses, considering the circumstantial nature of much of the evidence against Petitioner, the discrepancies between the appearance of the person described by eyewitnesses and Petitioner's appearance, and the lack of any meaningful curative instruction, the Court is in grave doubt about whether the prosecutor's statement that Petitioner confessed to the crime had substantial and injurious effect in determining the jury's verdict. Thus, the Court concludes that the error was not harmless.

**B. *Ineffective Assistance of Trial Counsel***

Petitioner's trial counsel Eusebio Solis failed to object to the prosecution's failure to produce Mr. Brand at trial. Thus, to the extent that the Michigan Court of Appeals would have found the Confrontation Clause claim was not preserved for review, the Court also considers whether Mr. Solis was ineffective in failing to address this issue at trial. The Court concludes that Mr. Solis's failure to raise this issue at trial was ineffective and prejudiced Petitioner.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (internal citations omitted).

The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996), *cert. denied* 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997).

The last state court to address Petitioner's ineffective assistance of counsel claim, the Michigan Court of Appeals, held, in pertinent part:

[O]ur review of the record reveals that in each instance, the action defendant suggests that counsel should have taken, would have either been futile, or a matter of strategy that this Court is unwilling to second-guess on appeal. The rec-

ord provides no support for defendant's proposition that counsel's failure to object to the admission of evidence ... fell below the objective standard of reasonableness. . . . We find that defendant has filed to overcome the presumption that he was afforded effective assistance of counsel.

*People v. Hicks,* 1996 WL 33348772, at *2.

 The Court finds that the Michigan Court of Appeals' decision was an unreasonable application of Supreme Court precedent. The state court's conclusion that counsel was not ineffective was due to its failure to recognize the Confrontation Clause violation or the gravity of that violation. As discussed above, the failure to produce Mr. Brand violated Petitioner's rights under the Confrontation Clause. This violation should have been obvious to defense counsel. There could be no strategic reason not to object. At the evidentiary hearing conducted in this Court, Mr. Solis testified that he did not recall specifically the prosecutor's opening statement. But, upon having his memory refreshed, concluded that it was "most definitely a good turn of events" when Mr. Brand was not produced for trial. Tr., 10/15/02, p. 37. Petitioner's attorney asked Mr. Solis whether it was harmful to his case that the jury heard Petitioner's purported confession to Mr. Brand, but Mr. Solis never was given the opportunity to impeach Mr. Brand, particularly because the circumstances of Petitioner's alleged confession to Mr. Brand were suspect. Mr. Solis replied:

I would rather not have Lorenzo Brand there, even with that impeachment. Because in—in my view, that's just another kind of straw that they're adding to the pile there, if you look at all the other evidence.

Tr., 10/15/02, p. 51.

The Court finds Mr. Solis's reasoning in this regard to be unreasonable. There

was substantial evidence which may have called into doubt Mr. Brand's credibility, such as: Mr. Brand's statement at the preliminary examination that police officers when asking him to testify also indicated that they "might" help him with respect to the charges he was facing; Mr. Brand was a complete stranger to Petitioner; and the holding area where Petitioner purportedly confessed had a prominently displayed sign informing prisoners that all activities in the holding area were being recorded. While Petitioner's alleged confession to Mr. Brand was placed before the jury, the foregoing information bearing upon Mr. Brand's credibility was not. The Court finds Mr. Solis's conclusion that this was a fortunate turn of events for Petitioner to be wholly unsupported by the record. Accordingly, the Court concludes that Mr. Solis's performance in this regard fell "outside the wide range of professionally competent assistance," and the state court's decision to the contrary was an unreasonable application of Supreme Court precedent. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

In addition he did not even obtain a meaningful curative instruction. The Court's instruction did not relate the missing witness Brand to the alleged jailhouse confession. *Supra,* 708.

The Court turns to the second prong of *Strickland,* which requires a showing that counsel's deficient performance prejudiced Petitioner. Prejudice may be established by a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687, 104 S.Ct. 2052. The Court has concluded that Petitioner's right of confrontation was violated and that the error was not harmless. Therefore, the Court holds that Mr. Solis's failure to object to the prosecution's failure to produce Mr. Brand rendered him constitutionally ineffective.

## C. *Identification Testimony*

■ Petitioner claims that his due process rights were violated when witness Norma Lewis, who was allegedly unable to identify Petitioner at the preliminary examination, was permitted to identify Petitioner as the shooter at the trial when he was sitting at the defense table alongside defense counsel. In addition, Petitioner claims that his trial attorney was ineffective in failing to: (i) ask for a hearing regarding the admissibility of the identification testimony, (ii) impeach Ms. Lewis based upon her prior failure to identify Petitioner; and (iii) failing to ask for a mistrial to cure the error.

■ The failure of a witness to identify an accused during a pre-trial lineup or preliminary examination does not render an in-court identification of the accused inadmissible. *U.S. v. Causey,* 834 F.2d 1277, 1286 (6th Cir.1987). *Accord People v. Barclay,* 208 Mich.App. 670, 676, 528 N.W.2d 842 (Mich.Ct.App.1995). The failure to identify an accused during pre-trial proceedings impacts only the weight of the witness's identification testimony, and not to its admissibility. *Causey,* 834 F.2d at 1286. Thus, Petitioner's due process rights were not violated by the admission of this testimony. In addition, Petitioner's attorney was not ineffective in failing to request a hearing pursuant to *U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), where neither Michigan nor federal law supported the exclusion of that testimony. Moreover, counsel was not ineffective for failing to ask for a mistrial on this basis.

Petitioner also claims that his attorney was ineffective for failing to cross-examine Ms. Lewis regarding her prior inability to identify Petitioner. The Michigan Court of Appeals denied this claim, holding, in pertinent part:

The record provides no support for defendant's proposition that counsel's failure ... to extensively cross-examine an eyewitness ... fell below an objective standard of reasonableness.... We find that defendant has failed to overcome the presumption that he was afforded effective assistance of counsel.

*People v. Hicks,* 1996 WL 33348772, *2.

In response to a grievance filed by Petitioner, trial counsel stated that he did not request a line-up during trial because Ms. Lewis had indicated at the preliminary examination that she could not identify Petitioner as the perpetrator. Trial counsel stated that his trial strategy was to cross-examine Ms. Lewis regarding discrepancies between her description of the perpetrator in the police report and her testimony at trial, and her testimony that she recognized Petitioner's eyes as those of the shooter even though she was fifty yards away from the shooter. A review of the trial court transcript reveals that counsel did cross-examine Ms. Lewis regarding certain weaknesses in her identification of Petitioner. Were this Court reviewing Petitioner's ineffective assistance of counsel claim *de novo,* the Court would find that counsel's failure to cross-examine Ms. Lewis regarding her inability to identify Petitioner at the preliminary examination, was ineffective and that Petitioner was prejudiced by the failure of defense counsel to more effectively cross-examine Ms. Lewis. However, the Court cannot say that the state court's conclusion that ineffective assistance of counsel was not established is contrary to or an unreasonable application of Supreme Court precedent.

Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim.

## VI. *Conclusion*

For the foregoing reasons, **IT IS ORDERED** that a writ of habeas corpus is

**CONDITIONALLY GRANTED.** Unless a date for a new trial is scheduled within ninety days, Petitioner Hicks must be unconditionally released.