NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0861n.06

No. 12-4225

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Oct 02, 2013

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLES PATTON, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE: DAUGHTREY, COLE, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Charles Patton challenges as procedurally and substantively unreasonable his 60-month sentence for possession with intent to distribute heroin. Patton also argues that counsel rendered ineffective assistance at sentencing by failing to request application of the "safety valve" provision, U.S.S.G. § 5C1.2(a), and by failing to object to the sentence imposed. Because the record is insufficiently developed in this direct appeal for us to consider the ineffective-assistance claims, Patton must raise them in a motion brought pursuant to 28 U.S.C. § 2255. We AFFIRM.

I.

A grand jury charged Patton and co-defendant Michael Lester with conspiracy to possess with intent to distribute 100 grams or more of heroin, 21 U.S.C. § 846, and possession with intent to distribute the same, 21 U.S.C § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2. PID 1-3. The Government

dismissed the conspiracy count as to Patton before Patton's trial. PID 189. Lester, who testified at

Patton's trial, pleaded guilty and was sentenced to 60 months' imprisonment based on his

cooperation. PID 750.

The district court set forth the background facts in its order denying Patton's motion for new

trial:

> During the latter half of 2010, United States Drug Enforcement Administration (DEA) Agents were investigating a heroin ring involving Defendant Lester. Several agents . . . had been given information about a delivery of heroin that would be driven down from Chicago, Illinois to Lester's house in Cincinnati, Ohio. On the night of October 8, 2010, the agents received word that Chicago DEA agents were tailing two vehicles that were driving in tandem toward Cincinnati from Chicago. Eventually, Officer Baker picked up the tail of the suspected drug couriers and followed them to Michael Lester's residence, where other agents were waiting in parked unmarked vehicles.

> Rather than pull over the suspected couriers, which could have tipped the Chicago dealers off to the DEA's investigation, the agents permitted the delivery and allowed the couriers to return to Chicago without any police intervention. The agents assumed that because Lester was on probation at the time and therefore was subject to random searches, he would not keep any drugs at his residence for a long period of time, and they suspected that someone would pick up any drugs that the couriers from Chicago delivered. Accordingly, the agents planned to "wall off," or prevent any further distribution of, the narcotics by arresting anyone who came to pick up the drugs from Lester.

> A short time after the delivery took place, DEA Task Force Officer Josh Schlie, who had been stationed outside Lester's house, observed an individual, later determined to be Patton, arrive in a black Cadillac and pick up a small package. Another officer, Sean Woods, followed Patton as he left Lester's house and drove toward I-75. Officer Baker followed behind Officer Woods in an unmarked vehicle. Patton turned onto an I-75 on-ramp, and began swerving in his lane, driving very close to the barrier on the right side of the highway ramp. Officer Woods activated his lights and attempted to stop Patton, but Patton continued driving. Officer Woods observed Patton leaning to the right, and then he saw Patton throw a package out of his vehicle. Moments later, Patton pulled over. After pulling Patton over, Officer Woods asked Patton what he threw out the window, and Patton denied having thrown

anything. Officer Woods then directed two uniformed patrol officers to transport Patton to the District Four Police Station.

In the meantime, Officer Baker remained at the scene of the traffic stop, and he and a few other officers searched for the package that Patton had thrown from his vehicle, eventually locating it on the side of the highway. The package, which was found to contain over 100 grams of heroin, was approximately six by six inches in width and three inches in thickness, and was marked with a fishtail. According to Officer Baker, the amount of heroin recovered was consistent with amounts distributed for further trafficking rather than for personal use. After locating the package, Officer Baker headed to the District Four Station, where he Mirandized and then questioned Patton. This time, Patton admitted to throwing the package, but claimed he did so only because he did not know what the package contained.

Michael Lester was the last person to testify at Patton's trial. According to Lester, Patton had been his barber for six or seven years. Sometime prior to October 8, 2010, Lester approached Patton about storing drugs for him because Patton's roommate had been dipping into his supply. Lester offered to pay Patton $500.00. On October 8, Lester received the heroin from Chicago, for which he paid $50,000.00. He then called Patton and told him to pick up the drugs. Lester paid Patton $100.00 when he picked up the package. In contrast to what Patton had told Officer Baker, **Lester testified that Patton knew the package contained heroin**. Specifically, Lester claimed that he had discussed the contents of the package with Patton in order to ensure that Patton knew not to store the heroin in a cold place as cool temperatures would decrease the potency of the drugs.
. . . .
Patton's trial lasted approximately two and a half days . . . . the jury deliberated for approximately one hour and fifteen minutes before returning a guilty verdict.

PID 316  319, 325 (emphasis added).

At sentencing, the district court granted Patton's request for a four-level "minimal-role"

reduction:

You argue that your role in the offense was extremely minor and, thus, you ought to be given a four-level reduction for minimal role. . . . Application Note 4 states that: Minimal participant under Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in a concerted activity. It's intended to cover defendants who are plainly among the  least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or

understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.

. . . .

I, as I mentioned before, I agree with you that neither you nor Mr. Lester knew all the individuals from Chicago and neither one of you traveled to Chicago as part of the criminal activity.

. . . .

And I do agree . . . with [defense counsel] Mr. Rubenstein, I think the more applicable application of this guideline is described in 3B1.2, Application Note 3(A) which gives an example. It says: For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under this section for only the quantity of the drugs you personally transported or stored is not precluded from consideration for an adjustment under the guideline.

**I do think that in the overall scheme of things here you were basically -- you weren't even really a courier.** You were only a courier to the extent that you picked up the drugs to hide them for Mr. Lester because he was on probation and he didn't want to keep the drugs, but you knew what the drugs were . . . .

PID 739  742 (emphasis added).  Later in the sentencing hearing, the district court stated that if it were not bound to impose the 60-month mandatory minimum sentence, it would sentence Patton below 60 months:

And let me tell you the overriding thing in this case, Mr. Patton, I consider this case to be a real tragedy.  You are . . . something like 62 years old . . . . 63.  You have a very minimal criminal record . . .  You've got a profession.  You're a cosmetologist and a massage therapist.  As far as I can tell, you've led a law-abiding life.  You're a good father and grandfather.  And, unfortunately, you used bad judgment in helping out a friend for an absolutely minimal amount of money.

I know everyone tried to convince you that you would be convicted at trial and that the best thing for you to do was to plead guilty, but I -- as I see a lot of your family said in the presentence report, one of your attributes is you do tend to be stubborn about things, and I think you thought you knew better than all of the lawyers and everyone and that you in your own mind justified that you weren't guilty of this offense; that you didn't -- you didn't feel like you really had the criminal intent one needs to have to do something like this.  Unfortunately, you knew it was heroin, you picked it up, you kept it for a friend.  It was a terrible error in judgment.  You then

fled from the police, threw the package out of the car. That complicated things a little bit more.

But I still -- I still feel very badly about what happened to you in this case and the sentence you're going to get, and I could go into the whole scenario of what happened; but the bottom line is that you were found guilty by a jury of an offense that has a minimum sentence of five years or 60 months. And depending on whichever guideline I use, 24 points, 26 points or 28 points, **I'm still bound by the minimum amount of imprisonment of five years.** I feel like that's probably **a greater sentence than maybe someone in your position who played the role in the offense you did should get**, but that's not my decision. That's a decision made by Congress and the Sentencing Commission. And **I'm obliged to give you at least 60 months**.

So I can give you all -- I can go through all of the reasons, all the other things that the Court has considered, but I feel like the record should reflect that I think I know you quite well. You participated in a number of pretrial hearings. You came to all those in person. The Court observed you. The Court observed you during the trial. And subsequent to that, you actually testified in front of the Court. I think I understand the facts. And I feel badly that you're going to be incarcerated for the period of time you are. I know you're a good father and that you've been very helpful to your daughter with her illness, and I feel bad that you won't be there for her at this point. But as I said, there's really not a whole lot I can do about it.
. . . .
And . . . one factor I haven't put on the record is that Mr. Patton's co-defendant, Mr. Lester, has received a sentence of 60 months. He got a big reduction because he cooperated with the government and testified against you. But considering this conspiracy to be a two-man job, clearly Mr. Lester was much more culpable than you were, Mr. Patton, and even with his cooperation, I feel that it would be unfair to give the man who instigated the offense less time than someone who agreed to hold the package for him. And for that reason, I intend to sentence you to 60 months imprisonment.

PID 745  47, 750 (emphasis added).

## II. Sentencing Error

This Court reviews sentences for procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is procedurally unreasonable if the district court committed "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the sentence." *Id*. "Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence." *United States v. Coleman*, 664 F.3d 1047, 1048 (6th Cir. 2012) (citation and internal quotation marks omitted). "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (citation omitted).

Patton argues that his sentence is both procedurally and substantively unreasonable based on the district court's failure to consider and apply the "safety valve," 18 U.S.C. § 3553(f)(1)-(5); U.S.S.G. § 5C1.2(a), given that the court found that the 60-month mandatory minimum sentence was greater than necessary as applied to him.

### A. Safety-Valve Provision

Under the "safety valve" provision, a defendant convicted of a drug offense under 21 U.S.C. § 841 or other enumerated statutes shall be sentenced "without regard to any statutory minimum sentence if the court finds that the defendant meets the [five] criteria in 18 U.S.C. § 3553(f)(1)-(5)." U.S.S.G. § 5C1.2(a). The five criteria of 18 U.S.C. § 3553(f) are:

(1)  the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2)  the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)  the offense did not result in death or serious bodily injury to any person;

(4)  the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5)  not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(1)-(5).[1]

The defendant bears the burden of showing eligibility for the safety valve by a preponderance of the evidence.  *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001) (internal citation omitted).

## B.  Procedural Unreasonableness

---

[1]The commentary to the safety-valve Guideline is limited and not helpful; it states that "Offense" means "the offense of conviction and all relevant conduct," and that "[u]nder 18 U.S.C. § 3553(f), prior to its determination, the court shall afford the government an opportunity to make a recommendation. *See also Fed. R. Crim. P. 32(f), (i)*."  U.S.S.G. § 5C1.2 cmt. n.3 & 8 (2011).  Rule 32(f) addresses the time for making and serving objections to the PSR, and provides that the probation officer may meet with the parties and investigate further, as appropriate.  Subsection (i) provides that the sentencing court must verify that the defendant and counsel have read and discussed the PSR, must allow counsel to comment on the PSR's determinations "and other matters relating to an appropriate sentence," and may for good cause allow a party to make a new objection at any time before sentence is imposed.  Fed. R. Crim. P. 32(f), (i).

Because Patton did not raise the safety-valve issue in the district court or object to his sentence following the court's *Bostic*[2] question, we review his claim of procedural unreasonableness for plain error. *United States v. Gunder*, 620 F.3d 642, 645 (6th Cir. 2010); *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Patton must demonstrate 1) error, 2) that is plain, and 3) that affects substantial rights, and if so, he must persuade us that 4) the error seriously affects the

---

[2]*United States v. Bostic*, 371 F.3d 865, 872 73 (6th Cir. 2004). PID 754 55. In the district court, Patton was represented by two attorneys, Peter Rosenwald through trial, and Scott Rubenstein after Patton filed a *pro se* motion for new trial and for appointment of new counsel. Rubenstein filed objections to the PSR, PSR 21 23, and represented Patton at sentencing.

The only mention in the record of the safety-valve provision is during attorney Rosenwald's testimony at the hearing on Patton's motion for new trial and for appointment of new counsel. PID 254 55. Rosenwald testified that as part of his discussions with Patton regarding the possible sentence he might face, he discussed Patton's possible eligibility to benefit from the safety valve provision if he were to meet with government agents and truthfully convey what he knew.

> Q. Mr. Rosenwald, as part of your discussion with Mr. Patton, did you discuss his potential exposure to a sentence?
> A. Yes.
> Q. And did you discuss the potential of cooperation, if he were to cooperate with the United States?
> A. The extent of that would have been not so much cooperation in the general sense. That's why I have to explain this. In other words, it was not a belief that he had extensive information that would help the government in cases, but he could be eligible for the safety valve by sitting down and discussing truthfully with the government what little bit he did know. And, yes, that was discussed with him.
> Q. You discussed the guideline safety valve?
> A. Yes.

PID 254 55.

fairness, integrity, or public reputation of the judicial proceedings. *United States v. Yancy*, __ F.3d __, No. 12-6204, 2013 WL 3985011, at *4 (6th Cir. Aug. 6, 2013).

Patton cites no authority supporting that the district court procedurally erred by failing to *sua sponte* consider applying the safety-valve at sentencing. Patton cites *Gall*, which sheds no light on this issue, and one other case, *United States v. Real-Hernandez*, 90 F.3d 356, 359 62 (9th Cir. 1996), which is easily distinguished, as the defendant raised and the PSR recommended that the district court apply the safety-valve provision.

Patton has not shown that the district court committed plain procedural error. "[T]he black letter law of this Circuit requires district courts to consider all factors brought to their attention by a defendant." *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006); *see also Gunter*, 620 F.3d at 646 47 ("The [sentencing] court must conduct a meaningful sentencing hearing and truly consider the defendant's arguments . . . . [w]e are easily satisfied that the court fulfilled its procedural duties."). Here, the safety valve was not called to the district court's attention and Patton's eligibility was not plainly apparent. We find no plain error.

## C. Substantive Error

Patton asserts that by failing to apply the "safety valve" provision, the district court failed to craft a sentence that was sufficient but not greater than necessary to achieve the goals of § 3553(a) and thus imposed a substantively unreasonable sentence. "A litigant has no duty to object to the 'reasonableness' of the length of a sentence . . . *during* a sentencing hearing, just a duty to explain the grounds for leniency." *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) (emphasis in original). Here, the ground for leniency the safety valve was not presented to the

district court. Thus we review the substantive reasonableness claim based on the safety valve for plain error as well. *Id.* at 391 92. ("If, under the heading of 'substantive reasonableness,' a defendant argued on appeal that the length of his sentence was too long because it did not account for the fact that he had voluntarily left a drug-trafficking conspiracy and had turned away from a life of crime before the police uncovered the conspiracy, . . . we would apply plain-error review . . . if the defendant had never presented [the argument] to the district court.") Although the record sufficiently establishes that a lesser sentence would have satisfied the purpose of § 3553(a), the court was not free to impose a lesser sentence absent Patton's eligibility for the safety valve. Because his eligibility is not clearly established on this record, we find no plain error.[3]

### III. Ineffective Assistance

Patton also claims that his counsel provided ineffective assistance at sentencing by failing to raise the safety valve and failing to object to the sentence imposed. Counsel may indeed have been ineffective, however, Patton cannot raise this claim for the first time on direct appeal because the record is insufficiently developed to make a determination regarding why counsel decided not to raise the safety-valve provision or object to the sentence imposed, and whether the court would have found him to be eligible. *See United States v. Wells*, 623 F.3d 332, 347 48 (6th Cir. 2010) ("Ineffective assistance of counsel claims alleging that [] counsel's performance was prejudicially deficient, *Strickland v. Washington*, 466 U.S. 668, 687 [] (1984), are generally not reviewed on direct

---

[3]The Government argues that Patton's ineligibility is clearly established. We disagree. Application of the safety valve appears on this record to be a matter of discretion.

appeal 'except in rare cases where the error is apparent from the existing record.'" (quoting *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006))).

Patton's ineffective assistance claims are more properly raised in a post-conviction proceeding under 28 U.S.C. § 2255. *Wells*, 623 F.3d at 348.

For the reasons stated, we AFFIRM.