**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0182n.06

Case No. 13-5107

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 07, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JOHNETTA JONES, aka Joe, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: GILMAN, COOK, and McKEAGUE, Circuit Judges.

COOK, Circuit Judge. Following a jury trial, Johnetta Jones appeals her convictions and 120-month sentence for four drug-trafficking counts. Maintaining her innocence and asserting ineffective assistance of counsel, she challenges the government's reliance on her alleged confession to law enforcement as well as the sufficiency of the evidence linking her to the conspiracy and establishing the drug quantities. Jones also argues that the denial of "safety-valve" relief, *see* 18 U.S.C. § 3553(f), resulted in an excessive sentence. Because we find her confession-related objection waived, her ineffective-assistance claim premature, and her remaining arguments meritless, we AFFIRM.

I.

Following the Drug Enforcement Administration's (DEA) lengthy investigation into the Memphis-based drug ring led by Earl Dean "Pete" Shaw Jr.—entailing confidential informants, surveillance, and Title III wiretaps—a federal grand jury indicted Shaw Jr. and several coconspirators in May 2011, including Jones, Shaw Jr.'s girlfriend. The coconspirators other than Jones pleaded guilty; only Jones proceeded to trial.

The government's case against Jones relied on the testimony of eight coconspirators delineating her role in the storage and delivery aspects of the enterprise. Ringleader Shaw Jr. testified that he enlisted Jones as a driver for cocaine transactions in Alabama and used her home as a "stash house" for 40 to 150-pound drug caches at a time. Not only did Jones know about the drugs in her house, he claimed, but she sometimes helped unload and package the shipments. (R. 727, Trial Tr. (Shaw Jr.) at 743–48.)

Other coconspirators similarly tied Jones to the ring. Shaw Jr.'s son detailed a four-ounce cocaine pickup at Jones's house that he claimed she knew about. (R. 727, Trial Tr. (Shaw III) at 568–69.) Damon Perry, a cocaine supplier, recounted a marijuana inspection at Jones's house, explaining that she allowed Shaw Jr. to "keep it there," and "she s[aw] it" when Shaw Jr. displayed it for him. (R. 726, Trial Tr. (Perry) at 510–11.) And marijuana customer Carlos Atkins testified that Jones drove Shaw Jr. to his house "several" times for 10 to 40-pound transactions, witnessing at least one of the money exchanges. (R. 728, Trial Tr. (Atkins) at 960–62.)

Testifying in her own defense, Jones disclaimed knowledge of the drugs stored in her house and categorically denied participating in Shaw Jr.'s cartel. In her account, what began as a music-promotion arrangement—with Shaw Jr. managing Jones's fledgling gospel-singing

career—budded into a romance with Shaw Jr. leaving his then-girlfriend and moving in with Jones. Jones recalled taking monthly road trips with Shaw Jr. for church-singing performances in Alabama, but denied receiving payment for driving. (*See* R. 729, Trial Tr. (Jones) at 1061–62.) Only upon learning of Shaw Jr.'s infidelity did Jones discover the drugs, uncovering marijuana packages in her closet while packing his clothes. That discovery led to a violent confrontation at an ex-girlfriend's house, in which Shaw Jr. attacked Jones while she attempted a 9-1-1 call to report the drug stash. But after a brief cooling off period, Shaw Jr. promised to stop storing drugs at her home, and the two reconciled. (*See* Corrected Appellant Br. at 17–19; R. 729, Trial Tr. (Jones) at 1063–67.)

Jones also testified about her encounter with law enforcement when the DEA executed a search warrant at her house in February 2011, following Shaw Jr.'s arrest. According to her, the agents repeatedly accused her of working for the drug enterprise, despite her fervent denials. She explained that she tried to call 9-1-1 when she discovered Shaw Jr.'s drugs, and when the agents told her they intercepted the call, she asked why they failed to respond to the assault. (*See* R. 729, Trial Tr. (Jones) at 1134–35.)

To discredit Jones's version of the February 2011 encounter, the government called the interviewing officer, Special Agent Charles Andrews. Describing the exchange as a non-custodial interview without *Miranda* warnings, Andrews claimed that though Jones initially denied any wrongdoing, she ultimately admitted storing Shaw Jr.'s cocaine and marijuana in her house and driving him to drug deals. (*See* R. 729, Trial Tr. (Andrews) at 1154–69.) The officer also recalled Jones describing the 9-1-1 call as her alcohol-induced payback for Shaw Jr.'s philandering. (*Id.* at 1155.) At no point did Jones object to this evidence.

After a six-day trial, the jury convicted Jones of conspiracy to possess with the intent to distribute more than five kilograms of cocaine and more than 1,000 kilograms of marijuana (Counts I and II); and two cocaine-possession charges related to transactions that took place in October 2010 (Counts XVII and XXVIII).  At sentencing, the district court acknowledged a preference for imposing a lesser sentence, noting Jones's minimal criminal history, but ruled that the statutory minimum required the 120-month sentence.  Jones timely appeals the convictions and sentence.

II.

*A.  Government's Evidence of Jones's Alleged Confession*

Jones first challenges the government's use of her alleged confession to Special Agent Andrews, offering an amorphous argument that accuses the government and DEA of everything from intentional *Miranda* violations to fabricating the entire account of her inculpatory statements.  Her reply brief bewilders more than clarifies; it emphatically denies pressing a *Miranda* argument and opts to advance a new hearsay objection under Federal Rule of Evidence 801.  (*See* Appellant Reply Br. at 3 (explaining, under the caption "Clarification of Issues Presented," that "Jones is not now nor has she ever made a suppression or *Miranda*-based argument as to *herself*").)  From these arguments, we distill two general themes: (1) coercive law enforcement techniques to obtain the evidence; and (2) improper use of the evidence at trial.  We dismiss both strains of arguments as waived.

Beginning with the arguments regarding the law enforcement techniques used to obtain her confession, we conclude that Jones waived any objection to the government's use of this evidence by failing to file a pretrial suppression motion as required by Federal Rules of Criminal Procedure 12(b)(3)(C) and (e).  Fed. R. Crim. P. 12(e) ("A party waives [subsection (b)(3)

objections, including motions to suppress evidence] . . . not raised by the deadline the court sets . . . ."); *see also United States v. Lopez-Medina*, 461 F.3d 724, 738–39 (6th Cir. 2006). Although the Rule permits a court to excuse compliance with pretrial deadlines upon a showing of "good cause," Fed. R. Crim. P. 12(e), the complete failure to lodge this objection at the district court constitutes waiver and, thus, precludes appellate review. *United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010); *see also United States v. Rantanen*, 467 F. App'x 414, 418 & n.8 (6th Cir. 2012) (explaining that some of our earlier cases referred to the waiver as a "jurisdictional" bar, but noting that "the result is the same" regardless of the label).

As for the hearsay objection, Jones waived this claim by failing to include it in her opening appellate brief. *E.g.*, *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 478 (6th Cir. 2004). And even if not waived, the argument lacks merit; Special Agent Andrews's testimony of her inculpatory statements to him qualifies as an admissible opposing-party's statement under Federal Rule of Evidence 801(d)(2). *See Neuman v. Rivers*, 125 F.3d 315, 320 (6th Cir. 1997) (approving under Rule 801(d)(2) an officer's testimony that he overheard a defendant make incriminating statements). Jones had an opportunity to cross-examine Special Agent Andrews and offer her version of the facts; the jury simply credited the officer's testimony instead of hers. *See, e.g.*, *Earhart v. Konteh*, 589 F.3d 337, 345–46 (6th Cir. 2009) (recognizing that the jury "could have believed" either of the conflicting accounts in determining whether a sexual assault occurred).

B.  *Ineffective Assistance of Counsel*

Next, Jones argues that the trial record amply demonstrates counsel's constitutionally deficient performance, justifying review of her ineffective-assistance claim on direct appeal. But, other than a sidebar exchange where defense counsel appears unsure regarding the details of

the alleged confession, Jones's argument fails to identify specific errors or show how they prejudiced her case.

Appellate courts usually allow ineffective-assistance claims to ripen on collateral review, recognizing the importance of "develop[ing] an adequate record on the issue." *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010). Because prudence favors that course here, we defer judgment on this claim. *Walden*, 625 F.3d at 967.

### C. Sufficiency of the Evidence

We next consider Jones's sufficiency-of-the-evidence argument. Though ostensibly contesting the evidentiary basis for "all counts of the indictment," Jones challenges only the conspiracy convictions, disputing both the evidence tying her to the conspiracy and the drug quantities found by the jury.[1] We confine our analysis accordingly.

Ordinarily, we assess sufficiency challenges under the *Jackson* standard, affirming so long as the evidence, viewed in the light most favorable to the government, permits a rational juror to find the crime's essential elements beyond a reasonable doubt. *United States v. Ramirez*, 635 F.3d 249, 255 (6th Cir. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). But Jones's failure to preserve these arguments with a motion for acquittal at the close of evidence

---

[1] Jones also argues, without authority, that we should exclude her coconspirators' adverse testimony for unspecified violations of their constitutional rights, suggesting that the government compelled their confessions, guilty pleas, and testimony against her. This argument differs in kind from her other sufficiency challenges. Yet, because she fails to demonstrate both a sufficient interest in her coconspirators' rights and their inability to exercise them, she lacks third-party standing to advance these claims. *See Powers v. Ohio*, 499 U.S. 400, 411 (1991); *United States v. Payner*, 447 U.S. 727, 731–32 (1980) (concluding that a criminal defendant lacks standing under the Fourth Amendment to exclude evidence illegally obtained from a third-party). And, contrary to counsel's suggestion, the government acted within its well-established rights in securing the coconspirators' testimony as part of their plea bargains. *E.g.*, *United States v. Clark*, 319 F. App'x 395, 405 (6th Cir. 2009); *United States v. Ware*, 161 F.3d 414, 420 (6th Cir. 1998).

restricts our review to plain error. *United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996). Thus, the "very heavy burden" typically applicable to sufficiency-of-the-evidence challenges becomes all the more daunting; the defendant must now show a "manifest miscarriage of justice," *United States v. Khalil*, 279 F.3d 358, 368 (6th Cir. 2002), prevailing "only if the record is devoid of evidence pointing to guilt," *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998). The substantial incriminating evidence here belies a manifest injustice.

Putting aside her statements against interest, the conspiracy's leader and Jones's boyfriend affirmatively linked her to his extensive drug-trafficking ring as both a "stash house" for large quantities of drugs and a driver for drug transactions. Further, his testimony regarding her occasional assistance with unloading and bagging the drug shipments and driving him to drug transactions—including one depicted in surveillance photos—demonstrates her knowledge of and active participation in the conspiracy. (R. 727, Trial Test. (Shaw Jr.) at 743–48; R. 728, Trial Tr. (Shaw Jr.) at 802–03.) The coconspirators generally corroborated her role as a driver and a witness to drug transactions. (*See, e.g.*, R. 726, Trial Tr. (Perry) at 481–82, 510–13; R. 728, Trial Tr. (Atkins) at 961–62.) This evidence substantiated her role in the cocaine- and marijuana-trafficking enterprise, and Jones's admissions to Special Agent Andrews further confirmed her coconspirators' accusations. *See, e.g.*, *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) ("Once a conspiracy has been shown, only 'slight' evidence is needed to connect a defendant to a conspiracy."). We discern no error, let alone plain error.

So too for the drug quantities involved in the conspiracy. In addition to the 40 to 150-pound stashes kept at Jones's house and the frequent 10 to 40-pound marijuana deliveries to Atkins with Jones driving, Shaw Jr. obtained 1 to 2 kilograms of cocaine from Perry "several times," and law enforcement stopped one of his trucks with more than 1,200 pounds of

marijuana. (R. 727, Trial Tr. (Shaw Jr.) at 747, 776–77.) The jury reasonably concluded that the conspiracy involved more than five kilograms of cocaine and more than 1,000 pounds of marijuana.

## D. Safety-Valve Sentencing

Last, in another argument raised for the first time on appeal, Jones argues that the district court should have granted a sentencing reduction under the safety-valve provision, 18 U.S.C. § 3553(f). Again, we review for plain error. *See, e.g*, *United States v. Patton*, 538 F. App'x 699, 704 (6th Cir. 2013); *United States v. Adams*, 321 F. App'x 449, 459 (6th Cir. 2009). To qualify for safety-valve relief from statutory-minimum sentences, a defendant must, among other requirements, "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct" prior to sentencing. 18 U.S.C. § 3553(f)(5). Ironically, Jones claims that her admission to Special Agent Andrews satisfies this requirement, despite her trial testimony (and appellate briefing) vociferously denying his account. If anything, Jones's conflicting positions exemplify her dissembling to the government, whether before, during, or after trial. We discern no error, plain or otherwise.

III.

We AFFIRM.